In the Matter of FLORENCE M. SLOAT, Appellant, against THE BOARD OF EXAMINERS OF THE BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

Argued April 21, 1937; decided May 25, 1937.

*Osmond K. Fraenkel* for appellant. Petitioner has a right to have her grievances reviewed by the courts. (*Matter of Carow* v. *Board of Education,* 272. N. Y. 341; *Matter of Citron* v. *O'Shea,* 244 App. Div. 158; *Matter of Levitch* v. *Board of Education,* 243 N. Y. 373; *Matter of O'Connor* v. *Emerson,* 196 App. Div. 807; 232 N. Y. 561; *Matter of McCarthy* v. *Board of Education,* 106 Misc. Rep. 193; *Matter of Miller* v. *Gould,* 121 Misc. Rep. 270; *Matter of Denering* v. *Board of Education,* 130 Misc. Rep. 759.) The interview and teaching tests given to petitioner were not competitive within the meaning of the Constitution and laws. (*Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435; *Matter of Scahill* v. *Drzewucki,* 269 N. Y. 343; *Matter of Fink* v. *Finegan,* 270 N. Y. 356.)

*Paul Windels,* Corporation Counsel (*Edmund L. Palmieri, Paxton Blair* and *Cyrus C. Perry* of counsel), for respondents.

LEHMAN, J. The petitioner, since 1927, has been a substitute teacher in the fine arts in the high schools of the city of New York. With the exception of an absence of eleven months in 1931 she has taught on " full time " each year. Her work as teacher has been satisfactory to the principals of the schools in which she taught. For some years prior to October 31, 1934, no appointments were made by the Board of Education to vacant positions upon the teaching staff of the city. Instead, substitute teachers were temporarily assigned to teach the classes where no regular teacher was available. After this court, in *Matter of Jaffe* v. *Board of Education* (265 N. Y. 160), indicated that this practice was not authorized by the Education Law (Cons. Laws, ch. 16), the Board of Education was constrained to make appointments to vacant positions on the regular teaching staff. Pursuant to the statute and the direction of the Board of Superintendents of the city of New York, the Board of Examiners announced, in October, 1934, that a competitive examination would be held for teachers' license in the subject of fine arts. Those who successfully passed the examination were placed upon an eligible list from which appointments to fill vacant positions as teacher in that branch might lawfully be made.

The petitioner took the examination. It included a written examination, a " practical " examination, and a physical examination. These tests the petitioner passed. The examination included, also, a " teaching test " and an " interview test." The petitioner was notified that she had failed in these tests. Her application to the Board of Examiners for a reconsideration of their decision was denied. Claiming that the tests in which she failed were " arbitrary and capricious," without announcement in advance of " objective " standards, and conducted without " proper basis for comparison and competitive rating between one applicant and another," the petitioner has sought relief in the courts.

The Constitution of the State of New York commands that: " Appointments and promotions in the civil service of the State &ast; &ast; &ast; shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive &ast; &ast; &ast;. Laws shall be made to provide for the enforcement of this section." (Art. 5, § 6.) The laws which have been passed are intended to provide the machinery by which, when practicable, competitive examinations may be held to determine merit and fitness. The Legislature has not attempted the impossible task of determining in what cases such examinations are practicable or to formulate the standards for comparisons of merit or fitness for particular positions. These are administrative details, appropriately intrusted to administrative officers. Statutes and administrative orders, alike, must conform to the mandate of the Constitution. They cannot authorize a procedure which would disregard or nullify that mandate. A person aggrieved by an order or determination of an administrative board or officer which has such result may, in proper case, appeal for redress to the courts. (*Matter of Barthelmess* v. *Cukor*, 231 N. Y. 435.) Upon such appeal the courts are not to be satisfied by lip-service. Disobedience or evasion of a constitutional mandate may not be tolerated even though such disobedience might, perhaps, at least temporarily, promote in some respects the best interests of the public. Arbitrary decision that in a given case it is not practicable to ascertain merit and fitness by competitive examination may be challenged and is subject to review by the courts. (*Matter of Keymer*, 148 N. Y. 219; *Matter of Scahill* v. *Drzewucki*, 269 N. Y. 343.) An examination is not competitive merely because it is so denominated. The substance, not merely the form, of a competitive examination is required.

In *Matter of Fink* v. *Finegan* (270 N. Y. 356, 361) this court, in an opinion by FINCH, J., said: " A test or

examination, to be competitive, must employ an objective standard or measure. Where the standard or measure is wholly subjective to the examiners it differs in effect in no respect from an uncontrolled opinion of the examiners and cannot be termed competitive. * * * An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience." The appellant misreads that opinion when she relies upon it as authority for the contention now made that, measured by the standard we have there formulated, the " teaching test " and the " interview test " of which she complains were not " competitive," and may not be used in determining her fitness for a teacher's position. What was said and what we decided in that case cannot properly be given such effect.

In that case the oral examination, of which complaint was made, constituted part of a " competitive " examination held for the purpose of preparing an eligible list for the three positions of police surgeon, medical officer in the Fire Department, and medical examiner in the Department of Sanitation. The record disclosed that the result of the oral examination did not depend upon the correctness of the answers given. A candidate was notified that he had failed to pass the oral examination though, it was conceded, that he had correctly answered every question put to him. The reason given for his failure was that, in the opinion of the examiners, although the candidate " was pleasant in manner and bearing and in comprehension fairly quick, he lacked force and executive ability and was altogether too mild " (p. 359). The record did not disclose that such qualities were important factors in the fitness of a physician in the positions in which the examination was held. It did not disclose whether there was any standard by which such qualities could be measured. It may be doubtful whether the

nature or the element of these complex qualities can be satisfactorily defined and, in saying that the candidate was, in the opinion of the examiners lacking in " force and executive ability," the examiners disclosed only their unsupported conclusion that the candidate lacked imponderable and undefined qualities without which a candidate was not fit for the position for which he was competing. There was no contention that the oral examination constituted, or was used as, a test of the possession of such qualities. It was, so far as appeared, devised and used merely as an opportunity for appraisal by the examiners of the candidates' personality and such appraisal rested so far as appears upon the unfettered judgment of the examiners. Their judgment may have been good, their fairness was not challenged. The authority conferred upon them by law was, however, limited to the ascertainment of merit and fitness by examination which so far as practicable shall be competitive and we were constrained to hold that the record did not disclose that the oral test constituted such examination.

Even in that case we took pains to point out that we were not condemning, in advance, all oral examinations or tests where evaluation of results must depend in greater or lesser degree upon the opinion of the examiners. We said that oral examinations might be necessary in the selection of teachers " to appraise their voices for carrying power, distinctness and absence of speech defects." In part, at least, the " interview test " of which the appellant complains was held for such purpose and was adapted to that end. The " teaching test," too, was reasonably devised to permit the appraisal of the teacher's ability to maintain order in the class, enlist the interest of the students, and impart knowledge to them. Indeed, in determining the merits of a substitute teacher and her fitness for appointment to a permanent position, the " teaching test " in the class room would, it is evident,

be particularly valuable. The mandate of the Constitution for the ascertainment of merit and fitness, so far as practicable, by competitive examination, may not be transformed into an interdict against the examinations which are best adapted for the demonstration of fitness. It would be impossible to formulate a standard by which such qualities may be defined or measured with entire objectivity. The law does not require the impossible or forbid the reasonable. The record discloses that here the examiners have based determination upon their estimates of qualities which, it is reasonably clear, affect the merit and fitness of a teacher and that this estimate is derived from tests calculated reasonably to show those qualities. Evidently it is not practicable to apply such tests in exactly the same form to each competitor or to make exact comparisons between them. That is true in some degree of every examination, especially of examinations calculated to show intellectual ability and broad cultural learning. Exact definition of the qualities which are essential or desirable may be impossible; exact formula or standard by which such qualities may be measured has never been achieved; mechanical application of any standard is certainly not practicable. Much must be left here to the judgment of the examiners. The test cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination.

It may well be true that, as suggested by the appellant, the examiners have erred in her case. There may be force, too, in the suggestion that possibility of error would be reduced if more than one examiner conducted such oral test and if the Board of Examiners defined, in advance, with greater exactness, the manner in which the examination should be conducted, and the manner in which the candidates should be marked and their

fitness measured. These are matters which, under the Education Law, must be determined by the educational authorities of the State, and the Education Law provides for review of their determination by the Commissioner of Education (§ 890). Appeal may be addressed to the courts only where it is made to appear that examiners acted arbitrarily and without application of " measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience." (*Matter of Fink* v. *Finegan, supra,* p. 362.) That is not the case here. We do not decide here in what cases, if any, remedy by appeal to the Commissioner of Education must be exhausted before there may be appeal or redress to the courts.

The order should be affirmed, without costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Order affirmed.