In the Matter of CARYL E. COHEN, Appellant, against HAROLD FIELDS et al., Constituting the Board of Examiners of the Board of Education of the City of New York, Respondents.

Argued June 8, 1948; decided October 14, 1948.

*Copal Mintz* for appellant. I. Respondents' concept of " record ", as applied in this case, is basically illegal. (*Matter of Sloat* v. *Board of Education,* 274 N. Y. 367; *Matter of Bridgman* v. *Kern,* 257 App. Div. 420, 282 N. Y. 375; *Hurley* v. *Board of Education,* 270 N. Y. 275; *Ciaccia* v. *Board of Education,* 271 N. Y. 336; *Matter of Fink* v. *Finegan,* 270 N. Y. 356; *People ex rel. Steele* v. *McGuire,* 139 App. Div. 680; *Matter of Cowen* v. *Reavy,* 283 N. Y. 232.) II. It was illegal for respondents to inquire of the principals whether they recommended the petitioner, with what degree of fervor they did so, and whether they would be " happy " to have him appointed as a first assistant in their respective schools. III. Respondents' determination is illegal because it expresses an ultimate conclusion unsupported by findings of fact. (*Matter of Wood* v. *Board of Education,* 267 App. Div. 959; *Matter of Perpente* v. *Moss,* 293 N. Y. 325; *Matter of Scudder* v. *O'Connell,* 272 App. Div. 251.) IV. It was illegal for respondents to adjudge petitioner's " record " " insufficiently meritorious " on the ground that teaching was of " secondary interest " to petitioner and that there was a " conflict of his out of school activities with his school activities." V. It was illegal for respondents to adjudge petitioner's " record " " insufficiently meritorious " on the ground: (a) That petitioner was wanting in " the high standard of maturity required in a position of this type "; or (b) that petitioner was of " uncooperative attitude * * * extremely selfish point of view ", etc., or (c) of adverse reaction to the petitioner's words or demeanor at the " hearing " on May 22, 1946. (*Matter of Fink* v. *Finegan,* 270 N. Y. 356; *Matter of Bridgman* v. *Kern,* 257 App. Div. 420, 282 N. Y. 375.) VI. If respondents' determination rests on a cumulation of grounds or considerations, it is illegal and falls if any one or more of the grounds or considerations is legally or factually

unsupportable. (*People ex rel. Gilson* v. *Gibbons,* 231 N. Y. 171; *Polin* v. *Kaplan,* 257 N. Y. 277; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418; *Weibert* v. *Hanan,* 202 N. Y. 328; *Wurtzman* v. *Kalinowski,* 233 App. Div. 187; *Jefferson* v. *New York Elevated R. R. Co.,* 132 N. Y. 483; *Starbird* v. *Barrons,* 43 N. Y. 200; *People* v. *Alex,* 265 N. Y. 192.)

*John P. McGrath, Corporation Counsel* (*Michael A. Castaldi, Seymour B. Quel* and *Morris Weissberg* of counsel), for respondents. I. The action of the board of examiners in denying a license to petitioner because of insufficiently meritorious record was not arbitrary, capricious or taken in bad faith. Under such circumstances the court may not substitute its judgment for that of the board. (*Matter of Valenti* v. *Board of Education,* N. Y. L. J., Jan. 26, 1943, p. 349, 266 App. Div. 757; *Matter of Steger* v. *Board of Education,* 171 Misc. 195, 260 App. Div. 1003; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330; *Matter of Carow* v. *Board of Education,* 272 N. Y. 341; *People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360; *Matter of Ottinger* v. *Civil Service Comm.,* 240 N. Y. 435; *Matter of Becker* v. *Eisner,* 277 N. Y. 143; *Matter of Beck* v. *Finegan,* 164 Misc. 334, 254 App. Div. 110; *Matter of Thomas* v. *Kern,* 280 N. Y. 236; *Matter of Davis* v. *Wiener,* 260 App. Div. 127, 285 N. Y. 537; *People ex rel. Leary* v. *Knox,* 166 N. Y. 444; *Matter of Sloat* v. *Board of Education,* 274 N. Y. 367.) II. Judicial review of ratings in civil service examinations is limited to a determination whether the ratings complained of violated some statute or were essentially arbitrary. (*People ex rel. Buckley* v. *Roosevelt,* 19 App. Div. 431; *Matter of Allaire* v. *Knox,* 62 App. Div. 29, 168 N. Y. 642; *People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570; *People ex rel. Caridi* v. *Creelman,* 150 App. Div. 746; *Matter of Allen* v. *Finegan,* 254 App. Div. 858, 278 N. Y. 737.)

LOUGHRAN, Ch. J. Examination of applicants who are required to be licensed or to have their names placed on eligible lists for appointment in the schools of the city of New York is a statutory duty that is imposed upon a board of examiners who are appointed by the municipal board of education. (Education Law, § 2504, subd. 2; § 2519, subd. 2.) At the times here in issue, a by-law adopted by the board of examiners read in part as follows:

" THE RATING OF RECORD. SECTION 14. 1. Prior to recommending the issuance of license in any examination, the Board of Examiners shall inspect the records of the applicants and shall appraise said records as ' satisfactory ', ' insufficiently meritorious ', or ' unsatisfactory ' for the license in question. The term ' unsatisfactory ' shall be used when the official service record is unsatisfactory or when the candidate is adjudged unfit with respect to character. The aforesaid inspection and appraisal shall be regarded as a non-competitive part of any examination and shall be duly designated as such in the announcement circular of the examination.

" 2. Such inspection may extend to the records of applicants as students, to their records as teachers or supervisors, and to their records of employment in any other profession, or in a mercantile or commercial occupation, or in a trade. * * *

" 3. For the appraisal of record the Board of Examiners shall avail itself of official records on file with the Board of Education, such as official annual and semi-annual ratings, recommendations granting or denying permanent appointment, ratings on substitute licenses and certificates, correspondence, etc. The Board of Examiners shall also inquire into the records of applicants by requesting appropriate college and professional school officials, supervisors, employers, and others, to furnish reports concerning applicants * * *.

" 7. The Board of Examiners shall refuse to recommend the issuance of license to applicants whose records are appraised as ' insufficiently meritorious ' or ' unsatisfactory '.

" 8. Following the non-competitive appraisal of record described in Subdivision 1, the records of applicants in competitive examinations for regular licenses (and such other licenses as the Board of Examiners may designate) whose records are not declared ' unsatisfactory ' or ' insufficiently meritorious ' for the license in question shall be competitively evaluated according to a rating scheme approved by the Board of Examiners for each grade of license."

Questions as to the validity of this by-law are here presented.

" Appointments and promotions in the civil service of the state and all of the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as

far as practicable, shall be competitive ''. This is a command of the Constitution of the State (art. V, § 6). In *Matter of Fink* v. *Finegan* (270 N. Y. 356, 362), we said: '' An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience '' (see *Matter of Sloat* v. *Board of Examiners*, 274 N. Y. 367; *Matter of Cowen* v. *Reavy*, 283 N. Y. 232). In the light of the constitutional principle so declared, we turn to the matters upon which our decision is sought.

Out of ninety-seven applicants, the petitioner was one of eight who passed all the written, teaching, supervisory, interview and physical and medical tests given in an examination for the competitive position of first assistant in social studies in the day high schools of the city of New York. Nevertheless, the board of examiners by a vote of six to one rejected the petitioner on the strength of the by-law in question, saying that in their opinion his record was '' insufficiently meritorious.'' The record of the petitioner so referred to consisted of official reports on file with the board of education, such as annual and semiannual ratings of his antecedent teaching activity made by his superiors in the city school system and of answers made by them and by others to inquiries that had been circulated by the board of examiners. It was thereby indicated that a high school principal formerly had criticized the petitioner as a teacher, though the petitioner's work was characterized as '' satisfactory '' in each of a series of reports made by this principal semiannually to the superintendent of schools of the city. In a report subsequently submitted by the same principal on a form supplied by the board of examiners, the following appears: '' Would you be happy to have the applicant [this petitioner] appointed as a first assistant to your school? Why? No. Feel that he is primarily a scholar interested in research. Teaching seems a secondary interest. * * * I hesitate to recommend the applicant for this license.''

A copy of that subsequent report was furnished to the petitioner and at his request he was then afforded a hearing before the board of examiners, after which the board passed upon his

record through a " referendum vote ". Of the six members who voted against him, three relied entirely upon the above-quoted final report of the high school principal under whom the petitioner had served several years before and a fourth member also took that report into account though in addition that member said the petitioner " was lacking in frankness during the hearing " and " on several occasions he made statements which were equivocal." A fifth member said: " The chairmanship of a department, particularly of a social science department, requires a higher degree of maturity, of identification with one's school, of understanding of the problems of the school, of cooperation with the school administrations (even though one may disagree with its policies), than is evidenced in the record of the applicant." The vote of a sixth member was cast against the petitioner " because of his uncooperative attitude, his extremely selfish point of view, and his tendency to twist the truth just a bit when questioned about extra-curricular activities ". The one member who was on the side of the petitioner said: " This man has an unusually wide background for the broad field of social studies. He made the mistake of endeavoring to put his own interests first on several occasions but not to the exclusion of demands made upon his time. For a position of this sort, the schools are the richer in having a person who has had the practical experience in the political science field that this candidate has had. Under the circumstances, I rate his record satisfactory." The decision of the board of examiners was recorded in this form: " Maj. vote — Record insufficiently meritorious."

This decision of the board was reviewed and confirmed by the courts below in the present proceeding which the petitioner brought under article 78 of the Civil Practice Act. He appealed to this court by our leave. The members of the board of examiners were respondents below and are the respondents here.

As we have seen, they rejected the petitioner by rating his record as " insufficiently meritorious " — an undefined phrase which the by-law permitted them to apply noncompetitively. Thus the by-law furnishes in its own text reason for its condemnation, seeing that it leaves an examiner at liberty to appraise the records of applicants in accordance with standards peculiar to an examiner himself, contrary to the Constitution.

There is no dispute in respect of the character of the petitioner, since under the by-law any significant moral defect would have necessitated the rating of his record as " unsatisfactory " and that was not done. Nor is there any question in respect of the petitioner's personal appearance or address or vocal expression or command of speech or teaching ability or competency in classroom management. Indeed he was subjected in the first place to a supervision test, an interview test, a teaching test and to physical and medical examinations, all of which ended favorably to him. In short the case is simply this: The petitioner was rejected because a minority of the board of examiners thought he was selfish and wanting in candor and in professional development, and because a majority felt themselves bound by the opinion of a high school principal who did not refuse to recommend the petitioner, but only said that he hesitated to do so. Of course, individual notions of that sort cannot be allowed to dictate the choice of civil servants in the competitive class, if the Constitution is to be obeyed.

We are constrained, therefore, to declare the by-law to be invalid and to nullify the determination here made pursuant thereto. Nothing else now stands between the petitioner and the license that was refused him. Hence the orders should be reversed, with costs in all courts, the determination of the respondents annulled and the matter remitted to Special Term with directions to grant the relief prayed for in the petition.

LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur; CONWAY, J., taking no part.

Orders reversed, etc. [See 298 N. Y. 754.]