In the Matter of Sidney N. Barnett, Petitioner, against Harold Fields et al., Constituting the Board of Examiners of the Board of Education of the City of New York, Respondents.

Supreme Court, Special Term, New York County, September 6, 1949.

*Copal Mintz* for petitioner.

*John P. McGrath, Corporation Counsel* (*Sidney P. Nadel* and *Michael A. Castaldi* of counsel), for respondents.

HAMMER, J. This proceeding was instituted by the petitioner, pursuant to the provisions of article 78 of the Civil Practice Act, for an order setting aside the respondents' determination that the petitioner failed an examination for license as principal of a high school because his "record" was "unsatisfactory", and requiring respondents to certify that petitioner passed said examination and is eligible for licensing as such principal, and to place his name on an alleged list of eligibles for said position.

Petitioner here moves for an order setting aside the respondents' determination and certifying petitioner as eligible and placing his name on the list of eligibles. Respondents, by cross motion, ask for the dismissal of the petition.

Petitioner, in his petition, shows certain facts which are not disputed. He is a first assistant in social studies at the High School of Music and Art and was one of thirty-four participants in a qualifying examination conducted by the board of examiners for license as principal of a day high school. The examination consisted of six parts: (1) written tests, (2) supervision test, (3) inspection test, (4) interview test, (5) physical and medical test, including an X-ray chest examination, and (6) record. Between October, 1946, and April, 1948, the afore-mentioned "written", "supervision", "inspection" and "interview" tests were administered by the respondents to the eligible candidates, and nine (including petitioner) satisfactorily passed. The "physical and medical test, including an X-ray chest examination" was administered to the petitioner and the other eligibles in May, 1948. A further medical examination was given the petitioner in October, 1948, whereupon on November 3, 1948,

he was adjudged to have satisfactorily passed same. On January 12, 1949, the board of examiners found petitioner's record " unsatisfactory " and found him lacking in merit and fitness for license as principal of a day high school.

There were thirty-four original participants in the examination. Eight satisfactorily passed all parts thereof. Thereupon on June 10, 1948, an alphabetical listing of said eight persons was sent by the board of examiners to the superintendent of schools, with notice that such persons were found fit and meritorious for license. On March 14, 1949, the petitioner instituted the within proceeding.

Prior to recommending the issuance of license in an examination, it is the duty of the board of examiners to inspect the records of applicants and to appraise such records as " satisfactory " or " unsatisfactory " for the license in question (by-laws of the board of examiners, § 14, subds. 1, 5). The board may avail itself of official board of education records, college, school, employment and other records; and may supplement such means of inquiry by correspondence or by personal investigation (§ 14, subd. 3). The board shall consider evidence of such elements of fitness as traits of character, conduct, personality; business or executive ability, capacity for school and class administration and for supervision (§ 14, subds. 2, 3; § 6, subd. 2[b] [1]). " The record of an applicant up to the time of action on his application may be made the subject of appraisal " (§ 14, subd. 4). " Positive evidence of fitness in the matter of record shall be required " (§ 14, subd. 1). A " satisfactory " rating " shall mean that the applicant is adjudged fit for license or position sought, in that he possesses the traits, abilities, and qualities subsumed under the term ' record ' to the degree deemed by the Board of Examiners to be necessary or desirable for the effective performance of the duties pertaining to the license or position sought. The term ' unsatisfactory ', shall mean that the applicant is adjudged not fit for the license or position sought, in that he does not possess the traits, abilities, and qualities subsumed under the term ' record ' to the degree deemed by the Board of Examiners to be necessary or desirable for the effective performance of the duties pertaining to the license or position sought; the term 'unsatisfactory' shall not be interpreted as necessarily implying the unfitness of the applicant in his present position." (§ 14, subd. 5.) " The Board of Examiners shall refuse to recommend the issuance of license to an applicant whose record is adjudged ' unsatisfactory ' as defined in the foregoing paragraph." (§ 14, subd. 6.)

The basic issue involved in this proceeding is whether the petitioner, a participant in a qualifying examination, was properly found by the board of examiners to be lacking in merit and fitness for license as principal of a day high school.

The board of examiners constitutes the professional examining board of the board of education of the city of New York and is established by section 2519 of the Education Law. Its primary duty is to conduct examinations of candidates for the various licenses established by the board of education or for placement on required eligible lists. Its members are highly trained specialists in the field of education and their judgment is entitled to great weight. The educational system of the city is comprised of over 33,000 teachers and more than 800,000 pupils, and its integrity depends upon the proper performance of the duties of this board.

A principal of a high school is appointed by the board of education upon the recommendation of the superintendent of schools (Education Law, § 2523, subd. 1). In New York City, the recommendations of the superintendent of schools " for appointment to the teaching and supervising service, except for the position of * * * principal of a high school, shall be from the first three persons on appropriate eligible lists prepared by the board of examiners." (Education Law, § 2523, subd. 10.)

As neither recommendation nor appointment is restricted to any order of relative merit, the position is in the noncompetitive class. Being in the noncompetitive class, there does not appear to be any reason why the examination to establish fitness therefor should be competitive. It would be contradictory and inconsistent to require open, uniform competition resulting in relative ratings, when the appointment may be made regardless of relative merit.

There is no constitutional mandate against legislative classification. The Constitution provides that laws shall be made for the enforcement of its civil service section (N. Y. Const., art. V, § 6). A legislative classification of a position in the noncompetitive class will not be overruled in the absence of proof that same was clearly arbitrary and unreasonable (*Matter of Felder* v. *Fullen,* 27 N. Y. S. 2d 699 [1941], affd. 263 App. Div. 986 [1st Dept., 1942], affd. 289 N. Y. 658 [1942]. See, also, *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92 [1906]; *Matter of Barthelmess* v. *Cukor,* 231 N. Y. 435 [1921]; *People ex rel. Sweet* v. *Lymann,* 157 N. Y. 368 [1898]; *Matter of Ottinger* v. *Civil Service Comm.* 240 N. Y. 435 [1925]). There is reasonable basis for the classification of so highly important a supervisory posi-

tion as high school principal in the noncompetitive class, and it has been found to be impracticable to fill the position competitively.

The examination under consideration was scheduled, announced, conducted, and rated as a qualifying (noncompetitive) examination. It was so designated. Candidates who had successfully passed designated parts of a prior examination were exempted from the corresponding parts of the instant examination. The examination was not numerically rated. It was announced that no eligible list would be promulgated. No eligible list was promulgated.

The petitioner who participated in the examination, claims to have passed same, and petitions the court to so hold. He cannot now also be heard to object to said examination on the ground that a competitive examination was required.

The petitioner also attacks the power of the board to amend its rules whereby the amended rules would apply to his case. Such a contention could be sustained only on the theory that he had a vested right to have applied to the evaluation of the examination those rules in effect at the time he commenced the examination. In the language of *People ex rel. Perrine* v. *Connolly* (217 N. Y. 570, 576) "The statement of the claims is their refutation." Examining bodies may not change announced ratings or rules where the effect of such change would be to destroy the competitive character of competitive examinations (*Matter of Wittekind* v. *Kern,* 170 Misc. 939 [1938] affd. 256 App. Div. 918 [1st Dept., 1939], affd. 281 N. Y. 701 [1939]; *Matter of Poss* v. *Kern,* 263 App. Div. 320 [1st Dept., 1942]). However, the examination here was not competitive, and the change in the by-laws was made to eliminate from old section 14 the undefined rating of " Insufficiently Meritorious " which the Court of Appeals had condemned in *Matter of Cohen* v. *Fields* (298 N. Y. 235 [1948]). New section 14 of the by-laws was not intended and did not have the effect of impairing the competitive character inherent in competitive examinations. The by-law was not enacted to apply solely to petitioner or affect him to his detriment. The by-law was intended to have, and did have, general application to all candidates in all examinations.

As the board acted within the scope of its legal authority in changing its by-laws, its right to make the change must be upheld. (*Matter of Immediato* v. *Kern,* 278 N. Y. 680 [1938]; *Matter of Brady* v. *Finegan,* 269 N. Y. 571 [1935]; *Matter of Allen* v. *Finegan,* 254 App. Div. 858 [1st Dept., 1938], motion for leave to appeal denied 278 N. Y. 737; *Roantree* v. *Board of Education*

*of City of N. Y.,* N. Y. L. J., Nov. 19, 1942, p. 1527, col. 6, affd. 266 App. Div. 652 [1st Dept., 1943].)

A qualifying examination, as distinguished from a competitive examination, by its nature, requires neither the giving of advance notice, nor the fixing of advance standards, both of which are merely safeguards of competition and relative merit. A non-competitive examination is required to be a reasonable test of merit and fitness (*Matter of Ottinger* v. *Civil Service Comm.,* 240 N. Y. 435 [1925]; *Matter of Neubeck* v. *Bard,* 275 N. Y. 43 [1937]).

In accordance with the by-laws information of petitioner was sought through channels likely to produce the necessary information, including records, reports and independent investigation which are shown in the record. A hearing was afforded petitioner and a transcript of the minutes was made and is in the record before the court.

Outstanding service and superior qualities of mind and personality, and positive evidence of fitness in the matter of record are proper standards for a rating of fit and meritorious for the position of high school principal. Conduct and personality are proper subjects of and essential for the position sought. It was said in *Matter of Fink* v. *Finegan* (270 N. Y. 356, 361): "The keynote of civil service is merit and fitness, comprising not only efficiency but character and loyalty to duty." In *Matter of Epstein* v. *Board of Education of City of N. Y.* (162 Misc. 718 [1936], affd. 255 App. Div. 745, motion for leave to appeal denied 279 N. Y. 784), Mr. Justice SHIENTAG, at Special Term (p. 721), said: " The board of examiners has the right to expect of applicants for licenses to teach ' a nice and scrupulous sense of honor which is as unlike mere honesty as the fine Damascus blade is unlike a farming implement.' It has a right to expect from them a strong and delicate sense of moral values." (See, also, *Matter of Beck* v. *Finegan,* 164 Misc. 334 [1937], affd. 254 App. Div. 110 [1st Dept., 1938]; *Matter of Nalore* v. *Baker,* 244 App. Div. 554 [4th Dept., 1935]; and *People ex rel. Keisler* v. *Moscowitz,* 87 Misc. 448 [1914].)

As the facts upon which the board reached its conclusion are not in dispute and are obvious upon a mere reading of the record, the necessity for formal findings is not shown even assuming such a requirement which also is not clear in this matter. (See *People ex rel. Schau* v. *McWilliams,* 185 N. Y. 92 [1906], *supra; Matter of Simons* v. *McGuire,* 204 N. Y. 253 [1912]; *Slavin* v. *McGuire,* 205 N. Y. 84 [1912]; *People ex rel. Caridi* v. *Creelman,* 150 App. Div. 746 [1st Dept., 1912]; and *Matter of Sloat* v. *Board*

*of Examiners of Bd. of Education of City of N. Y.*, 274 N. Y. 367 [1937].)

The facts in the record which were necessarily found by the board of examiners and are not in dispute, are as follows:

Since an early age petitioner has had a tremor of the fingers of his right hand, of which condition petitioner has known. The printed medical form upon the examination which petitioner took on February 21, 1936, for the position of first assistant to high school principal, contained the question "Have you any physical or mental defects?" to which petitioner answered "No." In his selective service classification questionnaire which he filled out on May 27, 1941, petitioner, in answer to a question in respect of physical or mental defects, stated they were "nervous tremor of the hands." On March 8, 1944, petitioner was medically examined and rejected for service in the armed forces, the record showing "many somatic complaints." For the subject examination for license as principal of a day high school respondents' medical form contained the questions "Have you any deformity of limb or spine?" and "Have you any physical or mental defect not covered by the above questions?" Petitioner on May 13, 1948, answered each question, "No". In reply to the further question thereon, in respect of military history, "if rejected state reasons", petitioner answered, "slight tremor, right hand".

Under direction of a certain faculty member a dramatic performance was given in the assembly of the High School of Music and Art on April 18, 1947. Students who witnessed the performance complained of same as indecent to the high school division of the board of education and asked for an investigation. Associate Superintendent Ernst and Assistant Superintendent Hamm personally went to the school on the investigation on April 20, 1947. On the next day, April 21, 1947, petitioner, who had not seen the performance, called on Assistant Superintendent Hamm, complained of the investigation and the manner of conducting same, asserted it should have been conducted by the principal, and unless the principal's investigation was unsatisfactory there should have been no superintendent's investigation, which petitioner characterized as a "sledge hammer" investigation. Petitioner was assistant to the principal, Dr. Steigman, but was neither supervisor of assemblies nor chairman of the department involved. Petitioner in a written statement explanatory of this visit stated, among other things, that "I pleaded (to Mr. Hamm) for a more tempered approach in the investigation of a situation where instantaneous action was not needed in order to prevent

damage. Whatever damage had been done was already done, and there was not the slightest possibility of immediate repetition." Petitioner's wife was a teacher in Evander Childs High School, which was under the supervision of Assistant Superintendent Thomas. Petitioner was in no wise connected with this school. In a matter involving the social studies department and a statement made by Mrs. Barnett (petitioner's wife), in respect of student government procedures at the school, a controversy arose and the principal referred to her action and statement, without mentioning her name, as " conduct unbecoming a teacher ". Petitioner went to the office of Assistant Superintendent Thomas and spoke to him in respect of the matter. Petitioner in his papers states he went there for " a purely personal interview. · I asked his advice on what action would be advisable. * * * There appeared to be no recourse from arbitrary treatment at school, from ex parte hearings, from public indictment and conviction without opportunity to reply. Was all this to be permitted to remain as an accepted pattern of principal-teacher relationships ".

These facts are not controverted. Petitioner upon the hearing afforded him made statements in explanation and attempted extenuation. The only question then presented is whether the inferences drawn and conclusion reached by the board of examiners were warranted by such facts. Assuming factual issues were thus presented, the board, which had the obligation of decision, also had the function and the responsibility of inference and of arriving at the conclusion. The conclusion reached of " unsatisfactory record " cannot be said to have been without warrant in the facts disclosed by the evidence and reasonable inferences drawable therefrom. Accordingly, it cannot be held that the board's conclusion was arbitrary, whimsical or capricious. Other bodies might even have arrived at a contrary conclusion to that reached, but as it was warranted by the evidence and fair inference, even the court may not exercise its own discretion or substitute its judgment for that of the board. Under the circumstances, the conclusion of the board of examiners of the board of education must be upheld. (*Matter of Marburg* v. *Cole,* 286 N. Y. 202, 208 [1941]; *Matter of Larkin Co.* v. *Schwab,* 242 N. Y. 330 [1926]; *Matter of Valenti* v. *Board of Examiners of Bd. of Education of City of N. Y.,* N. Y. L. J., Jan. 26, 1943, p. 349, col. 3, affd. 266 App. Div. 757 [2d Dept., 1943]; *Matter of Steger* v. *Board of Examiners of Bd. of Education of City of N. Y.,* 171 Misc. 195 [1939], affd. 260 App. Div. 1003 [1st Dept., 1940].)

The rule of law which requires "objective standards" is limited to competitive examinations (*Matter of Fink* v. *Finegan*, 270 N. Y. 356 [1936], *supra*; *Matter of Sloat* v. *Board of Examiners of Bd. of Education of City of N. Y.*, 274 N. Y. 367 [1937], *supra*; *Matter of Cohen* v. *Fields*, 298 N. Y. 235 [1948], *supra*).

In *Matter of Fink* v. *Finegan* (*supra*) the court, at pages 362–363, said: "An examination cannot be classed as competitive unless it conforms to measures and standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience.   *   *   *   However, before a non-competitive test is made part of an examination for a competitive position it should be found that the quality to be tested is essential for the position and that no objective standard or measure is available."

The language used seems to refer only to competitive examinations.

In *Matter of Ottinger* v. *Civil Service Comm.* (240 N. Y. 435, 443 [1925]) it was said: "Non-competitive examination does not restrict the appointing officer to the name highest on the list. He may reject any on the list or all if their personal qualities or associations seem to render them ineligible.   Non-competitive examination is merely an assurance that along with personal qualities or associations satisfactory to the appointing officer there shall also be the attainment of some standard of efficiency established as a minimum."

The cases of *Matter of Fink* v. *Finegan* (*supra*) and *Matter of Sloat* v. *Board of Examiners of Bd. of Education of City of N. Y.* (*supra*) are readily distinguishable. In *Matter of Fink* v. *Finegan* (*supra*) a competitive examination, the applicant was given an oral technical test and failed on the explanation that the examination was intended to be a personality test and the applicant was found lacking in force and executive ability.   It was held the determination was improper, as the announcement of examination did not state qualities of force and executive ability would be tested and they were not shown to be necessary qualifications of the positions, the record merely showing the conclusion that the candidate lacked such qualities.   In *Matter of Cohen* v. *Fields* (*supra*), another competitive examination, a report of a former principal was accepted by the board, a copy being furnished to the applicant, who, after hearing, was rejected as "insufficiently meritorious".   The court's decision held the determination was without basis in fact, and made pursuant to a rating "insufficiently meritorious", which was undefined in the by-law.

The language of the Court of Appeals in *Matter of Sloat* v. *Board of Examiners of the Bd. of Education of City of N. Y.* (274 N. Y. 367, *supra*) appears to state the rule which is controlling here: There it was said (pp. 373, 374) : " The mandate of the Constitution for the ascertainment of merit and fitness, so far as practicable, by competitive examination, may not be transformed into an interdict against the examinations which are best adapted for the demonstration of fitness. It would be impossible to formulate a standard by which such qualities may be defined or measured with entire objectivity. The law does not require the impossible or forbid the reasonable. The record discloses that here the examiners have based determination upon their estimates of qualities which, it is reasonably clear, affect the merit and fitness of a teacher and that this estimate is derived from tests calculated reasonably to show these qualities. Evidently it is not practicable to apply such tests in exactly the same form to each competitor or to make exact comparisons between them. That is true in some degree of every examination, especially of examinations calculated to show intellectual ability and broad cultural learning. Exact definition of the qualities which are essential or desirable may be impossible; exact formula or standard by which such qualities may be measured has never been achieved; mechanical application of any standard is certainly not practicable. Much must be left here to the judgment of the examiners. The test cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination. * * * Appeal may be addressed to the courts only where it is made to appear that examiners acted arbitrarily and without application of ' measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience.' (*Matter of Fink* v. *Finegan, supra,* p. 362). That is not the case here."

The petitioner's motion is denied and the respondents' cross motion is granted and the petition is dismissed, with costs.