Leonard J. Supple, J.
Petitioner passed the written examination for the position of police patrolman of the respondent municipality with the highest grade awarded upon that particu *784 lar examination. After an examination by the respondent’s psychiatrist, he was disqualified from appointment by the adoption by the respondent commission of the psychiatrist’s findings that he has, among other things, traits of passivity, excessive dependency, obsessiveness and certain vagueness. Upon being advised of the rejection of his application, he consulted with an independent general practitioner and an independent psychiatrist who, in general, found that he was free from abnormal mental trends, was able to cope with situations on his own, showed no evidences of emotional instability and was in excellent physical condition. The respondent’s psychiatrist conducted a further examination of the petitioner and reaffirmed his original finding and this time added the diagnosis that the petitioner had “ personality trait disturbances, specifically passive-aggressive personality, passive dependent type ”. The respondent commission again adopted the conclusion of its psychiatrist and refuses to further consider the petitioner for the civil service position that he seeks.
The New York Constitution (art. Y, § 6) says that appointments and promotions in the civil service shall be made according to merit and fitness to be ascertained, as far as practicable, by competitive examination, with certain special provisions not here applicable concerning veterans. Under the Constitution it has been held that selection need not be based solely upon written examinations but other tests, not competitive in nature, may be used in determining the merit and fitness of applicants for certain positions (Matter of Barnett v. Fields, 196 Misc. 339, affd. 276 App. Div. 903, affd. 301 N. Y. 543). Furthermore, section 50 (subd. 4, par. [b]) of the Civil Service Law authorizes the disqualification of a candidate ‘ who is found to have a physical or mental disability which renders him unfit for the performance of the duties of the position in which he seeks employment ”.
At the outset, it is well to note that where the right to appoint is being contested, rather than the continuation in service of a person already appointed, certiorari to review will not lie. Belief may be granted to the petitioner here only by mandamus which requires that it be shown that the respondent’s action was illegal, arbitrary, capricious or resulted from an improper motive (People ex rel. Braisted v. McCooey, 100 App. Div. 240).
Since there is here no proof that the respondent’s actions were based upon any improper motive or discriminated peculiarly against the petitioner, the court: must determine. if it was illegal, arbitrary and capricious forcthe'respondent 'commission to disqualify the petitioner solely-because, based upon *785 the findings of the respondent’s psychiatrist, they have found he does not have the traits of character they deem essential for a good policeman.
It is well to note that the civil service provisions of the Constitution and of the law not only intended to provide protection to individuals appointed to, or seeking appointment to, civil service positions, but were also intended to protect the public and all coemployees in the civil service (Wood v. City of New York, 274 N. Y. 155, 161). The importance of well-qualified policemen in the State has been underlined by the recently enacted (1965) Civil Service Law (§ 58) which mandates minimum standards for all policemen in the State outside of New York City.
Not all of us are qualified to be steeplejacks, nor elevator operators, nor policemen. The disqualifying factors in many instances cannot be measured by objective tests. If a person has a fear of heights (acrophobia), he would not make a good steeplejack, and if he fears closed spaces (claustrophobia), he would not make a good elevator operator. Either of such persons might easily be capable of discharging the duties of a large number of other occupations. Many people regarded as perfectly normal and who are living useful and productive lives have traits and attitudes which completely disqualify them for certain positions. Such persons are not regarded as mentally ill, or emotionally unstable, unless and until the symptoms of their condition proceed to the point where they unreasonably interfere with normal living. A policeman who cannot or will not make a prompt decision, who is incapable of independent action, is not a good policeman. For a policeman such a condition, while not “ abnormal ” or even rare, is just as disabling as crippling arthritis or a chronic back ailment. The former disabilities may well be more dangerous to fellow police officers than more obvious physical defects since the absence of the requisite traits of character demanded of a good policeman may not be known to fellow officers whose very lives may well depend upon the ability of their fellow officers to act quickly, decisively, responsibly and effectively. The inability of a policeman to make up his mind as to what should be done or his unwillingness to immediately do what should be immediately done can jeopardize the public safety.
In People ex rel. Apfel v. Casey (66 App. Div. 211) rejection of an applicant for the position of policeman was upheld when the municipal authorities adopted the opinion of the police physician as to the existence and the disqualifying nature of a physical defect. Here, the court cannot find that the municipal *786 commission acted illegally in employing a qualified professional to give his best judgment as to the existence or nonexistence of the traits of character indispensable to the proper discharge of the duties of a policeman. As indicated, the court is not determining that the respondent’s decision was correct, but only that it was reached by legal methods. So reached, it is beyond this court’s power to review.
The petition will be dismissed.