See also, 2 Cir., 458 F.2d 1167.

Boston M. CHANCE et al.,
Plaintiffs-Appellees,

v.

The BOARD OF EDUCATION OF the
CITY OF NEW YORK et al.,
Defendants-Appellants,

The Board of Examiners et al.,
Defendants-Appellees,

Charles Wiener (Pro se), Proposed
Defendant-Intervenor-Appellant.

Nos. 612, 875, Dockets 73–2320, 73–2476.

United States Court of Appeals,
Second Circuit.

Argued March 18, 1974.

Decided April 12, 1974.

nations and eligibility lists for supervisory positions in the City school system.

That prior order was appealed to this court and affirmed in Chance v. Board of Examiners, 458 F.2d 1167 (1972). The Board of Education on this appeal claims that the modified injunction violates state law and settled principles of equity jurisprudence. Since we do not agree with either contention, we affirm the judgment of the district court. However, we urge the district court to expedite resolution of those matters left open by the judgment under attack.

## I

We shall presume familiarity with our prior opinion in *Chance*, supra, which sets forth at some length the background of this litigation. Briefly, Judge Mansfield held in July 1971 that plaintiffs had sufficiently shown, for the purpose of preliminary relief, that various written examinations for supervisory positions in the City schools, prepared and administered by defendant Board of Examiners, were unconstitutional because they significantly discriminated against black and Puerto Rican applicants and were not sufficiently "job-related." D.C., 330 F.Supp. 203. The judge subsequently issued a preliminary injunction against use of these tests and eligibility lists based upon them.[2] His order also allowed the Board of Education and the Chancellor of the City School District, a co-defendant, to fill vacancies in supervisory positions on an acting basis. We affirmed that order, holding that on the facts the trial judge had not abused his discretion in exercising his equitable power to grant preliminary relief.

On the prior appeal, the contending adversaries were plaintiffs, who are black and Puerto Rican candidates for permanent supervisory positions, and the Board of Examiners. The Board of

Edmund B. Hennefeld, New York City (Norman Redlich, Corp. Counsel, of the City of New York, Stanley Buchsbaum, New York City, on the brief) for defendant-appellant Bd. of Ed.

Charles Wiener, pro se, proposed intervenor-defendant-appellant.

George Cooper, New York City (Jack Greenberg, Jeffrey Mintz, Deborah M. Greenberg, Elizabeth B. DuBois, Legal Action Center of the City of New York, Inc., New York City, on the brief), for plaintiffs-appellees.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

The New York City Board of Education appeals from an order of the United States District Court for the Southern District of New York, Walter R. Mansfield, J.,[1] that modified an earlier preliminary injunction dealing with exami-

---

1. After becoming a member of this court, Judge Mansfield continued to preside over district court proceedings in this case until recently, when the case was assigned to Judge Tyler.

2. The injunction in September 1971 was accompanied by an unpublished memorandum.

Education neither actively opposed the original motion for a preliminary injunction nor appealed from its grant. 458 F.2d at 1169. Thus, although there is a close relationship between the Board of Examiners and the Board of Education,[3] the two entities are distinct and took different positions in the early stages of the litigation. On this appeal, some two years later, these two defendants continue to go their separate ways; each has reversed its legal posture. The Board of Examiners, far from objecting to the modified preliminary injunction, has consented to a final judgment incorporating its terms. The Board of Education, on the other hand, strongly opposes the modified preliminary injunction and urges us to reverse it. These changes in position took place after long settlement negotiations while the case was pending in the district court after remand. These began in the fall of 1972, and culminated in an agreement between plaintiffs and the Board of Examiners, discussed below. The Board of Education did not participate in these discussions, although it apparently had opportunities to do so. After plaintiffs and the Board of Examiners reached their settlement agreement the Board of Education informed the court that it opposed the settlement. Plaintiffs then moved for a default judgment against the Board of Education based upon its inaction in the proceedings up to that time. In May 1973, in an unpublished opinion, the district court approved the settlement and in July incorporated its terms in a final judgment against the Board of Examiners and the Chancellor. The court denied plaintiffs' motion for a default judgment against the Board of Education, but modified the preliminary injunction which was then in force against that defendant to require it, "pending final determination of the action," to adhere to the terms of the settlement with the Board of Examiners.[4]

## II

We turn now to the settlement agreement. After the 1971 preliminary injunction, which prohibited continued use of various tests and eligibility lists, there nonetheless was a need to fill various supervisory positions as vacancies occurred. Until an acceptable examination system was developed, the need for the most part was met by a system of appointments of acting supervisors.[5] The settlement agreement, among other things, changed the interim procedure to allow permanent, rather than just acting, appointments when certain criteria were met. This change is the focus of this appeal.

In the district court the Board of Education opposed the settlement on two grounds. The first was that the new interim procedure had no fixed termination date and might continue indefinitely, thus frustrating what should be the proper final disposition of the litiga-

3. The Board of Education is the body entrusted with the general management and control of educational affairs in the New York City School District. N.Y.Educ.Law § 2552. The Board of Examiners is the professional examining arm of the Board of Education and is required to conduct examinations of candidates for the various licenses established by the Board of Education and for placement on various eligible lists. N.Y.Educ.Law § 2569; Barnett v. Fields, 196 Misc. 339, 92 N.Y.S.2d 117, 122 (Sup.Ct.N.Y.Co.1949), aff'd mem., 276 App.Div. 903, 94 N.Y.S.2d 904 (1st Dep't), aff'd mem., 301 N.Y. 543, 93 N.E.2d 346 (1950).

4. In its May 1973 opinion, the court also granted plaintiffs' motion for an order allowing the action to be maintained as a class action on behalf of all black and Puerto Rican candidates and potential candidates for supervisory positions. On June 28, after notice was given to the class, the court held a hearing on the settlement, at which time it heard objections from Charles Wiener, pro se, and others, including the Council of Supervisors and Administrators of the City of New York (CSA), Local 1, SASOC, AFL–CIO. In his July opinion, the judge denied Wiener's motion to intervene. Wiener's appeal is the subject of Part III infra. CSA has taken a separate appeal, now scheduled to be heard by this court in May.

5. Board of Education Special Circular No. 30, 1972–1973 (Regulations Governing the Assignment of Acting Supervisors) (Oct. 25, 1972).

tion: adoption of a constitutionally acceptable permanent examination procedure. The second basis of opposition was that the settlement violated a state requirement that appointments be based upon "merit and fitness." N.Y. State Const., Art. V, § 6; N.Y.Educ.Law § 2590–j, subd. 3(a)(1).

Judge Mansfield approved the settlement but paid careful attention to these arguments. As to the first, he agreed that "[t]he ideal solution would be the immediate establishment of a new permanent appointment system," but observed that

> such a system, which requires a careful study and analysis of numerous complex factors bearing on job relatedness, fairness and evaluation of performance, cannot be built in a period of days or even of weeks.

In the meantime, the judge pointed out, the system of acting appointments had caused financial and morale problems

> since acting personnel, a disproportionately high percentage of whom are Black and Puerto Rican, perform the same functions as regularly appointed supervisors but neither receive the same financial benefits nor enjoy the prestige and authority that go with performance.

He concluded that the settlement "would produce greater stability and confidence" in supervisors by allowing permanent appointments during the interim period until a new examination system was devised. Nevertheless, the judge conditioned his approval of the settlement upon the requirement that within six months

> the parties shall either agree upon a plan for a permanent system for the selection of supervisors within the New York City School System, or any party shall be free to apply to the Court for modification of the judgment.

The judge also rejected the argument that the settlement violated New York State law. He noted that:

> [T]he proposed new procedure appears to be based on the principle of merit and fitness, with emphasis on eligibility standards, parent involvement in the selection process, interviews, evaluation of on-the-job performance, and developments of and adherence to other selection criteria. New York's Constitution does not rigidly mandate competitive examinations as the exclusive method of selection. It provides that merit and fitness shall be ascertained by such methods "as far as practicable." Indeed, except for Buffalo and New York City the State's constitutional requirement is satisfied elsewhere by a system of certification based on the candidate's academic training and professional experience without resort to competitive examinations.

On appeal, the Board of Education makes essentially the same arguments as in the trial court, asserting that Judge Mansfield's order violates statutory and constitutional law of New York State, and that the order goes beyond the limits of preliminary injunctive relief. Appellees respond that the Board has been guilty of laches, that the injunction does not conflict with state law, that state law would not control in any event, and that the order falls within the scope of proper preliminary relief.

We are thus again primarily faced with the question, as we were two years ago, whether Judge Mansfield abused his discretion in the order under attack. This time, the issues before us are narrower since they go only to the propriety of the interim relief granted. As to the legality of the preliminary injunction under state law, the order does not authorize the permanent licensing of school supervisors without any examination. If it did, it would probably run afoul of the decision of the New York Court of Appeals in Board of Educ. v. Nyquist, 31 N.Y.2d 468, 341 N.Y.S.2d 441, 293 N.E.2d 819 (1973), construing N.Y.State Const., Art. V, § 6, and relied upon heavily by the Board of Education.

We would then be faced with plaintiffs' argument that state law can and should be overridden, if necessary, to redress past discrimination unconstitutional under federal law. But, as we see it, we need not reach that issue. In *Nyquist,* a decision of which Judge Mansfield was aware,[6] there was a grant of a permanent license to an acting supervisor *without any examination.* Here, the settlement agreement contemplates an interim system of appointment which includes a full examination. Appointments may be made from three categories of persons, the first two of which have already presumably taken and passed examinations.[7] The Board's objections are limited to the third category, which consists of those "(a) who have been or will be appointed to a supervisory position . . . on an acting basis . . . and (b) who have completed or will complete at least 5 months' service in that position on an acting basis. . . ." As to this group, the settlement agreement goes on to provide:

Such persons shall be licensed only after their on-the-job performance in that position has been evaluated and examined by the Board of Examiners, in conjunction with the appointing authority and pursuant to criteria developed with the appointing authority. . . .

■ We agree with the district judge that, at least on this record, this appointment scheme appears to comply with New York State law. In the absence of a certification statute [8] we, like Judge Mansfield, can do no more than make an educated guess in a difficult area.[9] But the New York cases indicated that the appointment procedure, at least as now contemplated, is not illegal.[10] Charles Wiener, whose attempt to intervene is discussed below, asserts that the new procedure will be a sham and is designed to give an inside track to those already serving in an "acting" capacity. He alleges that race, political patronage, nepotism and favoritism will replace

---

6. The judge discussed the case in his July 1973 opinion. See note 4 supra.

7. These categories include persons whose names appear on eligibility lists previously prepared by the Board of Examiners and persons who have already passed a written examination for supervisory positions under the jurisdiction of the Board of Education, but have not yet been placed on an eligible list.

8. We have several times commented upon the potential usefulness of such statutes. E. g., Peterson v. Allcity Ins. Co., 2 Cir., 472 F.2d 71, 80 n. 14 (1972) ; Cornellier v. American Casualty Co., 2 Cir., 389 F.2d 641, 644 n. 3 (1968) ; Schein v. Chasen, 2 Cir., 478 F.2d 817, 828–829 (Kaufman, J., dissenting), cert. granted sub nom. Simon v. Schein, Investors Diversified Services, Inc. v. Schein, 414 U.S. 1062, 94 S.Ct. 568, 38 L.Ed.2d 467 (1973). See generally Lillich & Mundy, Federal Court Certification of Doubtful State Law Questions, 18 U.C.L.A.L.Rev. 888 (1971). Indeed, the Supreme Court, which previously praised the Florida certification statute as an enactment of "rare foresight," Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 212, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), has granted certiorari on the issue whether we erred in declining to use that procedure in *Schein,* and heard argument on March 19, 1974.

9. The lower New York State courts apparently also have difficulty in reconciling the requirement for competitive civil service examinations with the need to redress past invidious discrimination. See State Division of Human Rights v. City of Schenectady, 351 N.Y.S. 2d 290 (Sup.Ct.Schenectady Co.1973).

10. N.Y.Educ.Law § 2590–j, subd. 3(b)(2) (examinations for supervisory positions shall be qualifying rather than competitive) ; Altman v. Lang, 44 Misc.2d 751, 255 N.Y.S.2d 284, 287 (Sup.Ct.N.Y.Co.), aff'd mem., 23 A.D.2d 820, 259 N.Y.S.2d 779 (1st Dep't), aff'd mem., 17 N.Y.2d 464, 266 N.Y.S.2d 975, 214 N.E.2d 157 (1965) (merit and fitness requirement does not compel perpetuation of traditional testing techniques where not feasible) ; Sloat v. Board of Examiners, 274 N.Y. 367, 9 N.E.2d 12 (1937) (evaluation of on-the-job performance proper element of examination for teacher's license) ; Walker v. Board of Examiners, 22 Misc.2d 345, 204 N.Y.S.2d 432 (Sup.Ct.N.Y.Co.1957), aff'd mem., 7 A.D.2d 968, 183 N.Y.S.2d 990 (1st Dep't 1959) (interview test proper element of examination for license as junior principal in elementary schools). Cf. Council of Supervisory Ass'ns v. Board of Educ., 23 N.Y.2d 458, 467–468, 297 N.Y.S.2d 547, 245 N.E. 2d 204 (1969).

merit and fitness as the operative criteria for selecting supervisors. If that were true, we have no doubt that it would be improper under state law. But the district judge envisioned no such egregious result and we will assume that until a permanent examination procedure is adopted, the district court will carefully supervise the manner in which the settlement agreement is implemented to see that the reality accords with the promise.

■ The Board of Education also claims that authorizing appointment of supervisory personnel not simply pendente lite but on a permanent basis violates principles of equity jurisprudence. The argument is that, at least as to this appellant, the order is only a preliminary injunction. This being so, says the Board, the district court could do no more than protect the subject matter of the litigation until the entry of a final judgment after joinder of issue and a full trial on the merits. Thus, until a permanent examination system is established either by judicial determination or by consent, no supervisor as a matter of equity law can receive a permanent appointment. We do not see why this should be so. Three and a half years have elapsed since the commencement of this lawsuit. A judgment has been rendered—final as to the Board of Examiners and the Chancellor of the City School District and acceptable to the Board of Education [11]—that the tests used in the past for supervisory school positions were discriminatory and unconstitutional. Until recently, however, the Board of Education has shown little interest in expediting the preparation of new and acceptable examinations. Meanwhile, hundreds of supervisors

have been given acting appointments, but not the pay or the prestige that go with the permanent position. It was within the discretion of the district court to take all these matters into account in modifying its earlier injunction, and we so hold.[12]

Finally, we must note that were the litigation to remain indefinitely in its unfinished state, the propriety of continuing to allow permanent appointments would be another matter. The interim tail would then be wagging the dog and the incentive for plaintiffs' class to obtain a permanent non-discriminatory testing system would diminish considerably and perhaps disappear. Indeed, we think too much time has already elapsed and we regret that the district court did not require the parties to adhere to the six-month time period it suggested in approving the settlement. Allowing another lengthy period of time to go by, thus creating further eligibles for permanent appointment as an "interim" measure, would approach an abuse of discretion. Accordingly, while we affirm the judgment of the district court, we suggest that the litigation be promptly brought to a close, either by judicial resolution of contested issues or by settlement.

### III

■ There remains for consideration the appeal of Charles Wiener from the denial of his motion to intervene as a defendant-appellant. See note 4 supra. Wiener is a teacher who has apparently passed several of the written examinations covered by the preliminary injunction. He seeks to intervene both to challenge the finding of the probable unconstitutionality of those examinations

---

11. A joint letter to the court, dated April 1, 1974, from counsel for plaintiffs and counsel for the Board of Education states that the latter does not intend to litigate the substantive issue of the merits of the examination system which was challenged in the instant lawsuit and enjoined by Judge Mansfield.

12. We also hold, however, that the Board of Education is not barred by laches from challenging the modified injunction. Despite plaintiffs' well-taken criticism of the Board's inaction until so late a stage in the litigation, we think it unwise to preclude the Board from raising issues of great public importance.

and to attack the propriety of the order allowing permanent appointment of acting supervisors. We have already referred, at the end of Part II, supra, to the basis of the latter attack. Judge Mansfield denied Wiener's motion to intervene on the ground that he was adequately represented by the existing parties.[13] We cannot characterize this ruling as an abuse of discretion, and we affirm. Wiener himself seems to concede, and we find, that his views on the merits were vigorously represented by the Board of Examiners through the first appeal. He contends, however, that after remand the Board of Examiners abandoned its defense of the old system of examination and settled with the plaintiffs, leaving him unrepresented. We take a different view. In light of the district court's finding, which we upheld, that the prior tests were probably unconstitutional, the Board of Examiners benefited Wiener in negotiating a settlement under which he can obtain a principal's license on the basis of having passed the old written examinations. See note 7 supra and accompanying text. Moreover, as we have indicated, the Board of Education has changed its position on remand and has adequately represented Wiener's views on the propriety of the relief granted by the modified preliminary injunction. Finally, Wiener, although not a party, has been given and has taken advantage of several opportunities to present his arguments to Judge Mansfield and, on both appeals, to this court. These arguments have been carefully considered.[14]

Accordingly, we affirm both the order modifying the preliminary injunction and the order denying Wiener's motion to intervene.[15]

13. Alternatively, the judge denied Wiener's motion as untimely. We need not reach this question.

14. Upon continuation of the proceedings in the district court, Wiener will presumably once again be given an opportunity to present his views as amicus curiae.

15. Wiener has also moved in this court for a survey of the "racial and ethnic background"

of acting supervisory personnel recently appointed, presumably to show that there have been improper hiring practices. Such a motion should be addressed to the district court in the first instance. More importantly, even if Wiener does not have the necessary status in the district court, we have already indicated in text, supra, that the district court must be alert to prevent abuses in implementation of the settlement agreement.