WAYNE EATHERLY, *Petitioner,*

*v.*

OREGON STATE CORRECTIONAL
INSTITUTION et al, *Respondents.*

(No. 277, CA 4394)

544 P2d 1053

*Gregory A. Hartman,* Portland, argued the cause for petitioner. With him on the brief were Willner, Bennett, Riggs & Skarstad and James B. Kenin, Portland.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

**FORT, J.**

A new position entitled ombudsman was created at the Oregon State Correctional Institution. In accordance with the Oregon merit system law, ORS ch 240, procedures were instituted by the Corrections Division of the Department of Human Resources to fill the position, which was classified as Administrative Assistant 3 (Ombudsman). Petitioner was one of eight successful applicants who passed the test administered by the Corrections Division with the approval of the Personnel Division of the Executive Department. The list, after certain rating procedures were completed, was narrowed to three, from which the Superintendent selected one. This appointment was confirmed by the Corrections Division. The petitioner, though one of eight out of ten applicants who passed the test, was not included among the three submitted by the Personnel Division to the Superintendent of the Correctional Institution, and he was not appointed. He appealed to the Public Employe Relations Board (PERB). That agency denied his appeal and upheld the action of the Superintendent and the Division in appointing the present incumbent, James Ward. From that denial he seeks judicial review.

Petitioner contends first that the promotional merit test which was given him was arbitrary and did not provide adequate safeguards to insure uniformity of rating.

In his petition for judicial review, petitioner seeks reversal of the Board order "because the test was so lacking in objectivity or measurable standards that it provided no means of assuring rational distinction between applicants on the basis of their actual differences in ability," and thus that the test was arbitrary and in violation of ORS 240.010. In his argument before the hearing board, petitioner took the position that "the question in this case is simply a legal question" relating to whether the test for a newly created position "complied with the law" in relation to its objectivity for appointment and as to "nonarbitrariness."

[ 43 ]

In his final argument before PERB itself, petitioner further refined the legal issues raised by challenging the test because "it did not comply with the law in considering annual merit ratings or performance evaluations as a factor on the test and * * * also on the basis that the test is not an objective test" within the law. Accordingly we limit our consideration on review to the issues raised by petitioner below. PERB concluded after extensive "findings of fact" and "conclusions of law" that the "selection method was not arbitrary or contrary to law." Accordingly it denied petitioner's petition to declare that "the test was arbitrary and contrary to law."

ORS 240.010 provides in part:

"* * * Except as otherwise provided in this chapter, *all appointments* and promotions to positions in the state service *shall be made on the basis of merit and fitness, to be ascertained by competitive examinations.* " (Emphasis supplied.)

ORS 240.430 provides in part:

" (1) In cooperation with appointing authorities, *the division shall establish standards of performance for employes* in each class of position in the classified service or for groups of classes, and a system of merit ratings based upon such standards.

" (2) *In such manner and with such weight as shall be provided in the rules, merit ratings shall be considered:*

"* * * * *

" (b) As a factor in promotion tests.

"* * * * *." (Emphasis supplied.)

ORS 240.086(3) authorizes the Board to

"[a]dopt such rules or hold such hearings as it finds necessary properly to perform the duties, functions and powers imposed on or vested in it by law."

It is not disputed that pursuant thereto the Personnel Division adopted Rules 42-200 and 42-500, discussed infra.

The Superintendent of Oregon State Correctional Institution, with the approval of the Personnel Divi-

sion, drew up the job description for the new position. The Administrator of the Corrections Division approved it. It contained certain factors which were divided into two groups denominated "Required" and "Important." In 1972, the agency, on behalf of all merit system employes, had adopted a New Promotional Evaluation Procedure.

ORS 240.330 states:

> "In accordance with the rules adopted by the division, the administrator shall from time to time conduct entrance tests and promotion tests as necessary for establishing employment lists and promotion lists."

ORS 240.335 describes the character of tests required for both promotion and entrance as follows:

> "(1) The entrance and promotion tests shall be competitive and shall be of such character as to determine the qualifications, fitness and ability of the persons tested to perform the duties of the class of positions for which a list is to be established.
>
> "(2) The tests may be written, oral, physical or in the form of a demonstration of skill, or any combination of such types.
>
> "(3) The tests may take into consideration education, experience, aptitude, capacity, knowledge, character, physical fitness and other qualifications as enter into the determination of the relative fitness of the applicants."

The underlying purpose of a civil service system is succinctly stated in *Ziomek v. Bartimole,* 156 Conn 604, 610, 244 A2d 380, 384 (1968):

> "The object of providing for civil service examinations is to secure more efficient employees, promote better government, eliminate as far as practicable the element of partisanship and personal favoritism, protect the employees and the public from the spoils system and secure the appointment to public positions of those whose merit and fitness have been determined by proper examination. Civil Service Board v. Warren, 74 Ariz. 88, 90, 91, 92, 244 P.2d 1157. * * *"

In *Deyesu v. Baltimore City,* 232 Md 601, 610-11, 194 A2d 783, 788 (1963), the court discussed the rule

[ 45 ]

which should govern the validity of civil service examinations and concluded:

"The Courts have held that it is the function of the civil service agency to use the methods it deems best adapted for the determination of fitness for a position and even if reasonable men could differ as to the soundness and appropriateness of the scope and character of the examination the judgment of the agency must prevail and is not to be interfered with by the courts in the absence of proof of bad faith or arbitrary, capricious or illegal action. *Frishein v. Reavy,* [263 App. Div. 490,] 33 N.Y.S.2d 894, aff'd by the Court of Appeals of New York in [289 N.Y. 712,] 45 N.E.2d 921; *Gollin v. Watson,* [200 Misc. 96,] 102 N.Y.S.2d 935; *Sloat v. Board of Examiners of Board of Education,* [274 N.Y. 367,] 9 N.E.2d 12 [112 A.L.R. 660]. * * *"

In 15 Am Jur 2d 484, Civil Service § 22, the authors discuss the rules applicable to examinations as follows:

"With respect to appointments of employees to positions in the competitive class, competitive civil service examinations are ordinarily required by constitutional, statutory, or charter provisions. An examination, to be competitive within the meaning of such a provision, must be given under an objective standard of grading; it must conform to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience. That an examination is denominated competitive does not make it competitive; the examination must be competitive in substance, not merely in form. But the fact that standards for determining whether a candidate has met certain tests cannot be defined or measured with entire objectivity does not render the test at variance with the statutory or constitutional requirements." (Footnotes omitted.)

■ Against the background of the foregoing authorities, we turn to the specific errors above alleged. There is substantial evidence here that the promotional test used in this case was as objective as such tests can be in view of the fact that it was a "promotional merit rating" and not a written or physi-

cal test. The test factors were carefully conceived and clearly measurable against objective standards of performance. The raters had objective factors to use to rate each candidate's qualifications on the basis of substantial recorded and observable past performance.

The same raters were not used for each of the applicants for the position in this case. The "New Promotional Evaluation Procedure" issued by the Personnel Division, dated August 24, 1972, states in Article VIII (New Procedure), paragraph 6:

"Agency Personnel Director has either employee's immediate supervisor and next supervisor (Unit or Program Manager) complete evaluation for Promotion forms or the Personnel Director forms an evaluation panel which interviews and arrives at a consensus of opinion on each candidate."

The job announcement stated:

"You must be an employe of the Corrections Division, in one of the following components: Oregon State Penitentiary, Oregon State Correctional Institution, Adult Parole and Probation, Adult Transitional Services, and the Oregon Women's Correctional Center and eligible for promotional examination."

With the scope of possible candidates who could be expected to apply from all sections of the Corrections Division, the agency decided to utilize the candidates' supervisors as the raters rather than a single rating panel, both as an administrative convenience and because it was believed that the candidates would receive the most accurate ratings from supervisors who observed their work daily, and particularly because they prepared their past annual merit ratings.

We think the foregoing shows substantial compliance with the relevant statutes and regulations set forth above.

Petitioner's second contention is that the test here employed for the ombudsman position did not comply

with ORS 240.430,[1] and further that it used "such subjective characteristics" that it "could not be competitive as required by ORS 240.335."[2]

■ Concerning petitioner's contention relating to non-compliance with ORS 240.335 relating to the character of the tests, substantial evidence supports the Board's conclusion that the test used did not fail to consider petitioner's merit rating or merit ratings as required by ORS 240.430. ORS 240.430(2) states:

> "In such manner and with such weight as shall be provided in the rules, merit ratings shall be considered:
>
> "\* \* \* \* \*
>
> "(b) As a factor in promotion tests.
>
> "\* \* \* \* \*
>
> "(d) As a means of discovering employes who should be promoted, demoted, transferred or dismissed."

---

[1] ORS 240.430:

"(1) In cooperation with appointing authorities, the division shall establish standards of performance for employes in each class of position in the classified service or for groups of classes, and a system of merit ratings based upon such standards.

"(2) In such manner and with such weight as shall be provided in the rules, merit ratings shall be considered:

"(a) In determining salary increases and decreases within the limits established by law and by the compensation plan.

"(b) As a factor in promotion tests.

"(c) As a factor in determining the order of layoff when forces must be reduced because of lack of funds or work, and the order in which names are to be placed on reemployment lists.

"(d) As a means of discovering employes who should be promoted, demoted, transferred or dismissed."

[2] ORS 240.335:

"(1) The entrance and promotion tests shall be competitive and shall be of such character as to determine the qualifications, fitness and ability of the persons tested to perform the duties of the class of positions for which a list is to be established.

"(2) The tests may be written, oral, physical or in the form of a demonstration of skill, or any combination of such types.

"(3) The tests may take into consideration education, experience, aptitude, capacity, knowledge, character, physical fitness and other qualifications as enter into the determination of the relative fitness of the applicants."

[ 48 ]

Both ORS 240.355 and particularly Personnel Rules 42-200 and 42-500[3] were also considered.

Personnel Rule 42-200 states in part:

"* * * Promotional tests shall give consideration to the quality and length of service rendered to the state by the employees who are competing. A special ..ting of promotional potential will be used in promotion tests, except that the administrator may authorize the use of the annual merit rating. *With the approval of the appointing authority and the administrator, a promotion test may consist entirely of a promotional merit rating.*" (Emphasis supplied.)

The announcement of July 24, 1973, for the "Administrative Assistant 3" position stated that "the examination will consist entirely of a promotional merit rating." Under said circumstances it cannot be said that the promotional test in this case had to be exclusively limited to the use of one or more of the candidates' annual merit ratings, nor can it be said that one or more of such annual merit ratings had to be included in the promotional test as a "required factor" in such a way that the numerical scores given in such merit ratings were mathematically averaged into the scores assigned the evaluation of the candidates' predicted performance in the promotional test "Required" and "Important" factors. It is in evidence that the promotion test and the supervisory raters considered the candidates' past performance both generally and as observable data from which they could reasonably predict whether the candidates' past experience in state service had been of a length,

---

[3] Personnel Division Rule 42-500:

"When a rating of experience and training forms all or a part of a test, the administrator shall develop procedures for the evaluation of those factors that will serve to assist in the selection of the best qualified candidates. Procedures that are adopted shall give due regard to quality, recency, and amount of experience and to the pertinency and amount of training. In establishing the value that a rating of experience and training shall bear to the total test, and in determining the length of time for which experience credit shall be awarded, consideration shall be given to the amount of learning time required to perform efficiently the duties of the position."

character and quality which would reasonably demonstrate that the employe met the "Required" and "Important" factors.

The test used here set forth both "Required" and "Important" factors on the basis of the employes' personnel records and the supervisory raters' personal knowledge of the employes' past length and quality of service. The same four rating columns for each "Required" and "Important" factor were used for each applicant, namely: "Unsatisfactory Promotional Potential," "Employe Development Required to Fully Meet Standards for Promotion," "Meets Standards for Promotion" and "Exceeds Standards for Promotion."

As a result of the examination, petitioner received ratings which were numerically computed by the Personnel Division as a score of 88, with several other applicants, rated by their supervisors, scoring substantially higher. The final "Certification of Eligibles" list contained two individuals with scores of 95 and a third individual with a score of 92. The name of the three applicants with the highest scores were submitted to the Superintendent of the institution, who as provided in ORS 240.365 appointed one of them—who had the highest score—to the ombudsman position.

In his brief, petitioner also challenges the alleged failure by the two supervisors who marked his test and that of two of the other applicants to give proper consideration to one of the factors mentioned in the job description, namely, to represent or advocate the position of residents charged with rule violations.

In its order, the Board agreed but concluded:

"While a failure to apprehend the qualities sought as an 'advocate' existed, no error appears that of necessity impaired Petitioner's selection for the position. Assigning a perfect score in the area where the rater may have erred would not have assured Petitioner of being certified as one of the top three candidates."

We agree.

■ We think substantial evidence shows that the findings and conclusions of the Public Employe Relations Board that the test and rating procedures were in compliance with the relevant statutes and regulations were correct.

Affirmed.