Argued November 18, 1976, affirmed in part, reversed in part and
remanded February 22, 1977

# PAUL, *Respondent,*
## *v.*
# PERSONNEL DIVISION, *Petitioner.*
## (Nos. 378, 379, CA 6615)
### 560 P2d 293

John W. Burgess, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

John S. Irvin, Salem, argued the cause and filed the brief for respondent.

Edward L. Clark, Jr., and Clark, Marsh & Lindauer, Salem, filed a brief amicus curiae for Corrine C. Williams.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

TANZER, J.

**TANZER, J.**

The Administrator of the Personnel Division seeks judicial review of an order of the Employment Relations Board (ERB) setting aside eligibility lists for two job openings in the Public Welfare Division, and also setting aside appointments made from those lists. He challenges the orders as being unsupported by substantial evidence and, if supported, beyond the scope of ERB's remedial authority. The order was issued after a consolidated hearing on two petitions, filed with ERB by an applicant for both positions. The positions involved are "Specialist in Community-Based Care" and "Program Consultant, Services in Congregate Care." They are classified as Program Executive 2 and Program Executive 3 respectively.

Public notices of the two openings were prepared by the Personnel Division, in cooperation with the Public Welfare Division, and were issued on June 30, 1975. Both announcements contained a brief description of the position's major responsibilities and a statement of the minimum qualifications needed to apply. They described the examination for the positions as an evaluation of training and experience based upon information submitted with the applications.

After the closing date for applications, members of the Personnel and Public Welfare Divisions reviewed the submitted materials and formulated the criteria by which those applications would be graded.[1] Applications for the Program Executive 2 position were assigned grades according to the following criteria:

"96—Admin. or supv. experience in a social service agency (providing job placement or handling job

---

[1] ERB's order was not based upon the fact that the rating criteria were formulated after all applications had been submitted and reviewed. Although much of the hearing before ERB and much of the argument on appeal concerns this procedure and although ERB specifically found that this procedure was followed, there is nothing in ERB's conclusions of law which relates to this issue. We therefore do not consider the regularity of post-application formulation of grading criteria.

referrals) include the development of training programs.

"90—Supervisory experience of an adult service staff including extensive training programs.

"84—Supervisory experience of a social service staff including training.

"78—Supervisory or advisory experience providing casework skills."

The criteria for grading applications for the Program Executive 3 position were:

"90—Management or supervisory experience in developing programs for the aging.

"84—Management or supervisory experience in a program for adult services which includes specialized programs for aging.

"78—Supervisory experience in a program P/T physical or mentally disabled which involves training."

The Personnel Division then compiled an eligibility list for each position. Applicants who had received a score of 78 or above were placed, in rank order, on the respective lists which were then forwarded to the Administrator of the Public Welfare Division who interviewed the highest scoring applicants. The vacancies were filled from among those interviewed.

Petitioner received a score of 90 on her Program Executive 2 application and a score of 78 on her Program Executive 3 application. She was not interviewed for either position. Petitioner challenged the grades received on both applications first before the Personnel Division, where she declined an invitation to submit any additional information which would be pertinent to reevaluation of her grade, and then by petition to ERB.

ERB's order was based upon two "Conclusions of Law." We first consider the validity of the conclusion of law relating to the adequacy of the job announcement for both positions. As to each position, the order notes that a comparison of the rating criteria with the contents of the job announcement discloses a failure to

announce the weight to be accorded to each type of training and experience in the grading process.[2] Because the job announcements do not set forth the kind of experience to be evaluated, ERB concluded that the announcement process was "arbitrary."[3]

The basic statute is ORS 240.086, which provides:

"The primary responsibility of the board shall be to foster and protect a merit system of personnel administration in state government. In carrying out this function it shall:

"(1) Review and hear comments on any rules or modifications thereof adopted by the Personnel Division and on any schedule adopted by the Department of General Services under ORS 182.435. Such a rule or modification or schedule does not become effective if the board finds that it is arbitrary, improper or contrary to law and disapproves it on that basis.

"(2) Review any personnel action that is alleged by an affected party, or an organization certified by the rules of the board as representing an affected party, to be

[2] As to the Program Executive 2 position, the omission is as noted in the portion of ERB's Conclusions of Law quoted below at footnote 3. The Program Executive 3 announcement states that applicants should have experience "in working with aging and/or disabled and/or in protective services related to adults." There is no indication in the announcement that a higher value will be placed on one of these types of experience than on another. Nevertheless, in evaluating the applications, the two highest ratings were awarded to persons having experience in programs for the aging.

There is no claim that petitioner did not submit all relevant qualificational information.

[3] ERB concluded:

"The examination announcements for the two classes set out under the section 'Who May Apply,' the minimum qualifications for admittance to the examination, but the examination announcements do not state the kind and level of knowledge and experience that will be evaluated in the unassembled examination. It was impossible for the job applicant to prepare her application relating knowledge and work experience to the work experience particularly sought when the job experience being sought was not made known to the applicants. For example, the highest weight, 96, was given in the Program Executive 2 test to 'Administrative or supervisory experience in a social service agency (providing job placement or job referrals) including the development of training programs.' The examination announcement does not indicate that this is even a needed or desirable experience to bring to the job. The failure to provide a clear understanding by applicants of the knowledge or experience desired is arbitrary."

arbitrary or contrary to law or rule, or taken for political reason, and set aside such action if it finds these allegations to be correct. The board on its own motion may act with like effect under this subsection.

"(3) Adopt such rules or hold such hearings as it finds necessary properly to perform the duties, functions and powers imposed on or vested in it by law."

■ ORS 240.086(2) authorizes ERB to set aside any personnel action which is contrary to rule or law or taken for political reason or arbitrary. First, there is no claim here of political action. Next, the word "arbitrary" is not a catchall provision. It may not be used as the vehicle for a policy decision. Rather, it applies to action which is taken without cause, unsupported by substantial evidence, or nonrational. Its typical application is in cases where there is no evidentiary basis for the challenged personnel action.[4] Because there are no evidentiary issues with respect to the job announcements, the question here is not whether they are arbitrary, but rather whether they are "contrary to law or rule."

■ The controlling statute requires only that announcements are to contain a statement of the "qualifications required" for the position. ORS 240.350(2). We are aware of no statute or rule which mandates the Personnel Division to additionally set forth in job announcements its evaluative criteria to be applied in ranking those who meet the required qualifications. Although there may be merit in such a requirement, ORS 240.180 and 240.086(1) give substantive rule-making authority to the Personnel Division, not to

---

[4] The legislature has traditionally intended review for arbitrariness to mean essentially the same thing as review for substantial evidence. For example, early versions of the writ of review statute, ORS 34.040, provided that the writ would lie if the tribunal acted "arbitrarily." Oregon Laws 1965, ch 292, § 1. This was interpreted as authorizing substantial evidence review. *Vollmer v. Schrunk,* 242 Or 196, 409 P2d 177 (1965) (Denecke, J., concurring specially). The writ of review statute was subsequently amended substituting a provision allowing substantial evidence review for the word arbitrary. *See generally Myers v. Carter/Marquam Invest. Corp.,* 27 Or App 351, 556 P2d 703 (1976).

ERB,[5] and the Personnel Division has adopted no such rule. Absent statute or rule, ERB is without authority to compel such a practice. Thus, this conclusion is erroneous and cannot support ERB's order. Therefore the order, as it applies to the Program Executive 3 position, is reversed.

■ The other "Conclusion of Law" relates to petitioner's qualifications for the Program Executive 2 position only. ERB's order states:

> "The evidence shows that the Petitioner had certain experience in job placement and the development of training programs which was made known to the Respondent, in the Program Executive 2 examination, but which was not considered by the Respondent. The failure to consider this experience in the evaluation process was arbitrary."

This conclusion is essentially a finding, i.e., a factual determination that petitioner's relevant experience was not considered, followed by a conclusion, i.e., that the failure was arbitrary. We hold that the finding was supported by substantial evidence in the record. Information which petitioner submitted with her Program Executive 2 application indicated that she had "[h]elped applicants secure jobs, [s]upervised on the job placements, mostly for blind adults * * *" and that she had "* * * presented [a plan for] a two year training program to Chemeketa Community College * * *." According to the applicable rating criteria, this experience appears on its face to be relevant to elevate petitioner's score from 90 to some point in the 91-96 bracket. Also, the personnel officer who participated in devising the rating criteria and who evaluated petitioner's application testified that she did not recall seeing information in petitioner's application relating to job placement experience or to the development of a training program. This tes-

---

[5] In *Eatherly v. OSCI,* 24 Or App 41, 544 P2d 1053 (1976), we erroneously identified ORS 240.086(3) as the source of the Personnel Division's rule-making authority. That section refers only to the procedural rule-making authority of ERB.

timony and a comparison of the experience listed in petitioner's application with the rating criteria were substantial evidence from which ERB could find that the Personnel Division failed to consider some of petitioner's relevant experience. The conclusion is therefore upheld.

The next issue is whether ERB's order provides a lawful remedy for the erroneous grading of petitioner's application. ERB's broad remedy was ordered pursuant to its understanding of the power granted to it under ORS 240.086(2) as an independent source of authority to set aside any wrongfully taken "personnel action."[6] That subsection, however, is not a freestanding wholesale grant of remedial authority. For nonarbitrary, nonpolitical personnel actions, as here, the authority granted under the subsection is specifically related to duties imposed upon the Personnel Division or the appointing authority or rights granted to the aggrieved person by some other specific statute or rule adopted thereunder. Thus, one must look elsewhere for specific "law or rule" which is the source of ERB's authority for action under ORS 240.086(2). In this context, ERB is essentially a legal referee to assure that an aggrieved person receives the benefit of statute and rule, and that the employment arms of the state act within their lawful authority.

The root statutory authority with which ORS 240.086(2) requires ERB to enforce compliance in this case is ORS 240.355, which both defines an applicant's right to fair test rating and limits the remedy for an error in the rating process:

"* * * Each person competing in any test shall be given written notice of his final earned rating or of his failure to attain a place on the list. In addition each person successfully completing an agency promotion test shall upon his request be furnished with information

---

[6]The term "personnel action" is not defined in ORS chapter 240 or in the Personnel Division rules. Presumably, the term has a technical meaning. However defined, the term apparently includes the rating of job applicants and we so assume for purposes of this decision.

concerning his relative standing on the list. Each person competing in a test may, not later than one month after the establishment of the list and in accordance with the rules adopted by the division, have his rating in any and all parts reviewed and corrected if manifest errors are found. No such correction shall invalidate any appointment previously made from such a list. Procedures adopted for retaking a test shall be in accordance with rules adopted by the division. In all cases, the most recent score obtained on a retake shall be used to determine the candidate's rank on the eligibility list or his failure to attain a place on the list."

In providing a remedy for errors in grading, the legislature appears to have recognized the inevitability of such mistakes and sought to facilitate their correction. Where the job has not been filled, regrading places the aggrieved applicant into the same position she would have been in had the mistake not occurred. If the job has been filled, then the statute provides the most effective remedy possible without prejudice to the interests of the innocent appointee.[7] It is reasonable to infer from the statute a legislative intent to balance the remedial rights of an incorrectly graded applicant against the right of another employe who accepted the job presumably in good faith.

■ Since, as ERB concluded, petitioner's test was erroneously graded, the Personnel Division was under a statutory duty to adjust her score. When it failed to do so, ERB was authorized to grant relief by ordering the Personnel Division to perform its statutory duty. In ordering the Personnel Division to perform its duty under ORS 240.355, however, ERB cannot require it to exceed its statutory authority. ERB's order to set aside the eligibility list and the appointment made from that list was therefore beyond ERB's authority and must be vacated.

We note that the statute does not provide a satisfy-

_____
[7]The due process problems raised in the amicus curiae brief which arise in setting aside the job appointment of a person who is not a party to the proceedings are avoided by this remedial limitation.

ing remedy in cases like this where the position has special qualifications and has been filled by appointment of another applicant. In the usual case, eligibility lists are for general job classifications, not for a particular position within a classification. Within this framework, eligibility lists are intended to be a continuing source of qualified employes for positions within a classification. Thus the fact that one position has been filled from a list does not render the list meaningless. A change in a person's grade and his position on the list may improve his chance of being selected for the next available job. In this case, however, the eligibility list was for a particular job rather than a classification. If the job is unique, placement of the petitioner with a higher score on an eligibility list may be an illusory remedy unless the job or similar jobs open up. While the remedy for this petitioner may be incomplete, it is as full as the balancing of interests in ORS 240.355 allows.

The lawful remedy in this case was for ERB to order the Personnel Division to set aside the personnel action, i.e., the scoring of petitioner's test, and to make the appropriate adjustment in petitioner's score. We remand this portion of the order for that purpose.

Affirmed in part; reversed in part and remanded.