OPINION OF THE COURT
 

 Wesley, J.
 

 More than a half a century ago in
 
 Matter of Fink v Finegan
 
 (270 NY 356) and
 
 Matter of Sloat v Board of Examiners
 
 (274 NY 367) this Court articulated the standards for assessing whether an oral civil service examination is “competitive” as mandated by the New York Constitution. In this appeal we revisit these long-standing principles to determine whether an oral language proficiency examination administered by the Suffolk County Department of Civil Service passes constitutional muster.
 

 I. Factual Background
 

 Petitioner is an employee of the Suffolk County Department of Social Services. During 1995-1996 the Department administered an open, competitive examination for the position Probation Investigator, Spanish Speaking. This examination consists of two parts. The first component, a written multiple choice
 
 *480
 
 exam, was administered on September 30, 1995. The written exam is designed to measure knowledge, skills and abilities in areas such as interviewing, record-keeping and establishing and maintaining working relationships with defendants and probationers. The scores obtained from the written exam determine a candidate’s rank on an eligibility list. Petitioner passed this portion of the exam.
 

 The second component is an oral Spanish exam. This exam, which is designed to evaluate a candidate’s Spanish proficiency, is an improvised 15-minute conversation between the candidate and examiner. The examiner assesses the candidate’s language abilities using pre-set criteria — grammar, pronunciation and vocabulary. A rating sheet with a scale of 1 to 10 points is used to grade the candidates in each area.
 
 [1]
 
 The examiner substantiates the ratings by noting specific comments regarding the candidate’s strengths and weaknesses in these areas. An overall average of seven points is necessary to pass this portion of the examination. The exam is recorded on audiotape.
 

 Before petitioner took the oral examination, she received an expanded description of the exam that details the abilities to be tested and the method of testing. This description also indicates that vocabulary, grammar and diction are the basis for evaluating candidates. Additionally, in a memorandum issued prior to the oral exam, the Department informed petitioner that if she believed that a serious error occurred in the administration of the proficiency exam she was required to notify the Department in writing within five business days and to explain the way in which the error would affect the test results. Petitioner signed this memorandum and certified that she carefully read and understood it.
 

 On January 3, 1996 a professor of Hispanic Language and Literature at the City University of New York, Queens College administered the oral proficiency exam to nine people, including petitioner. He evaluated her command of Spanish according to the criteria specified on the rating sheet. Petitioner received a rating of six for pronunciation, six for grammar and
 
 *481
 
 five for vocabulary. The examiner commented that petitioner used “very hesitant and halting Spanish,” had “few communication skills,” was “very weak” on grammar and did not use the correct Spanish words for “unemployment” and “homeless.” At the conclusion of the examination, petitioner did not notify the Department of any error in the administration of the test.
 

 Six of the nine people who took the exam passed. Petitioner was notified that she was among the three individuals who did not pass the proficiency portion of the examination. The letter also advised her that she had 10 business days to administratively appeal the Department’s determination. She submitted a written request to the Department for a post-rating review of the oral examination. Petitioner listened to the tape of the exam and completed a form setting forth the basis for her administrative appeal. Petitioner indicated that the testing was conducted “under pressure” and stated that when she listened to the tape she realized that “there were certain words that I could have said correctly.” Petitioner also requested a copy of the tape because she questioned whether the examiner was speaking Castillian Spanish or the colloquial Spanish spoken in the area (Latin American Spanish).
 
 [2]
 
 The Department informed petitioner by letter that, after considering her appeal, it could not identify any “manifest error in the test or in its administration.” Therefore, it had “no basis for making a correction to the score” of her exam. Petitioner then requested a copy of the tape pursuant to the Freedom of Information Law (FOIL) (Public Officers Law art 6). The Department denied the request, citing departmental policy. A subsequent letter from the County Attorney’s office advised petitioner that her request was denied on the grounds that the oral exam contained questions that could be used again
 
 (see,
 
 Public Officers Law § 87 [2] [h]).
 

 Petitioner commenced a CPLR article 78 proceeding, seeking a judgment vacating the Department’s determination and compelling the Department to certify her for permanent appointment on the eligibility list for the position of Probation Investigator, Spanish Speaking, in the proper and correct rank. Petitioner contended that the Spanish oral proficiency exam did not meet the requirements of article V, § 6 of the New York State Constitution.
 

 Petitioner commenced a second article 78 proceeding seeking judicial review of the determination that the tape was exempt
 
 *482
 
 from disclosure under FOIL and compelling the Department to provide the tape. She withdrew this proceeding when the Department provided a copy of the tape as part of the record contained in its answer to the first article 78 proceeding. Petitioner thereupon hired an independent consultant to review the tape and rating sheet used during her oral examination. The independent consultant, whose qualifications are comparable to those of her examiner, conducted her own evaluation using the same criteria and a similar rating sheet as that employed by the Department, and gave petitioner a passing grade.
 

 Supreme Court dismissed the petition, holding that the oral proficiency examination was not administered in an arbitrary, capricious or unreasonable manner. Petitioner appealed, and the Appellate Division, with one Justice dissenting, reversed the judgment and granted the petition to the extent of remitting the matter to the Department “for reconsideration pursuant to objective standards, so as to afford the petitioner the opportunity to earn the position via a truly competitive examination” (253 AD2d 523, 525). In arriving at its conclusion, the Court noted that the oral examination had no answer key; the Court therefore reasoned that the examiner had unfettered discretion in grading the examination. The Court concluded that there was a “total absence of objective standards to govern the test”
 
 (id.,
 
 at 525). The lack of objectivity coupled with the Department’s refusal to provide petitioner with a copy of the exam tape for the purposes of administrative review indicated to the Court that petitioner’s right to have her competency judged in a competitive exam had been violated.
 

 The dissent argued that although a court may intervene to ensure that tests are fairly administered and that promotions are awarded according to merit and fitness, once it is determined that the standards employed were fair and reasonable, the court’s involvement ends. The dissent noted that inasmuch as the oral examination here was intended to assess a candidate’s conversational Spanish skills, it necessarily involved a certain measure of subjectivity. According to the dissent any assessment of petitioner’s “conversational skills is best left to the [Department], whose examiners possess the special expertise and knowledge necessary to effectively evaluate the candidate’s qualifications”
 
 (id.,
 
 at 526). We granted leave to appeal, and now reverse.
 

 
 *483
 
 II. The Constitutional Requirements
 

 Article V, § 6 of the New York Constitution provides:
 

 “Appointments and promotions in the civil service of the state and all the civil divisions thereof * *
 
 *
 
 shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive.”
 

 This mandate, and the laws passed pursuant to it, ensure that a reasonable basis exists for determining merit and fitness for civil service positions throughout New York State.
 

 What, however, does “competitive” mean in the context of an oral examination? This Court first addressed this question in
 
 Matter of Fink v Finegan
 
 (270 NY 356,
 
 supra).
 
 In that case the oral examination at issue constituted part of a “competitive examination” held for the purpose of preparing an eligibility list for several medical positions in different departments in the City of New York. Petitioner passed the written test and thereafter took an oral examination consisting of technical questions of a medical nature, all of which he answered correctly. He nevertheless failed the oral exam because he lacked “executive ability.” In the opinion of the examiners, although petitioner “was pleasant in manner and bearing and in comprehension fairly quick, he lacked force and executive ability and was altogether too mild”
 
 (Matter of Fink v Finegan, supra,
 
 at 359).
 

 The Court vacated the results of the test, concluding that there was no showing that executive ability was a quality necessary for the positions, nor did the notice of the examination alert petitioner that this quality would be tested. Furthermore, there were no objective standards set forth for measuring the petitioner’s executive ability, nor was there any showing that such standards could not be established. We noted:
 

 “An examination cannot be classified as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience.
 

 “Some positions in the civil service may require that the person who fills them have certain qualities which cannot be measured by existing objective tests * * * The Constitution requires that the examination be competitive as far as practicable. Thus, for
 
 
 *484
 

 such positions, the examination should be competitive except for the testing of the qualities not measurable by objective tests” (Matter of Fink, supra,
 
 at 362-363 [citation omitted] [emphasis added]).
 

 Because the test had no objective standards for the ability actually examined, it fell short of the “competitive” mandate of our Constitution. The Court cautioned that “ [n] on-competitive examinations may readily be manipulated by the unscrupulous with little likelihood of detection. Politics, passion and friendship may play their part”
 
 (id.,
 
 at 363).
 

 Two years later, in
 
 Matter of Sloat v Board of Examiners
 
 (274 NY 367,
 
 supra),
 
 the Court explored the practical difficulties involved in devising a wholly objective oral exam. Petitioner applied for a teaching license and took a variety of tests, including an “interview test” and a “teaching test.” She failed these tests and was denied a license. Petitioner attempted to have the results set aside on the ground that the test was not objective, as required by
 
 Matter of Fink.
 
 The Court concluded that her reliance on
 
 Matter of Fink
 
 was misplaced.
 

 The Court observed that in
 
 Matter of Fink
 
 “we took pains to point out that we were not condemning, in advance, all oral examinations or tests where evaluation of results must depend in greater or lesser degree upon the opinion of the examiners”
 
 (Matter of Sloat v Board of Examiners, supra,
 
 at 372). The Court went on to hold that in certain cases a test “cannot be wholly objective and to the extent that it is subjective the result may depend as much upon the fitness of the examiners as upon the fitness of the candidate. That is a risk inherent in all systems of examination”
 
 (id.,
 
 at 373).
 

 The essence of both
 
 Matter of Fink
 
 and
 
 Matter of Sloat
 
 is that oral exams — whether testing personality, teaching skills, language proficiency or some other attribute — should employ objective standards
 
 as far as practicable.
 
 Where completely objective examinations are not possible, an exam should be devised in a way that demonstrates that it tests merit and fitness and is not based upon the unfettered (and perhaps concealed) preferences of the examiners.
 

 Contrary to the Appellate Division’s holding, there were objective standards to govern the test at issue in this case. Indeed, unlike the examination that occurred in
 
 Matter of Fink,
 
 where the examiners disclosed only their conclusions that the candidate lacked imponderable and undefined qualities without
 
 *485
 
 which a candidate was not fit for appointment, here the standards used to evaluate candidates, the abilities for which candidates would be tested and the substance, form and method of the oral exam were all clearly delineated.
 

 Petitioner was tested along with eight others by the same examiner using the same grading system. Pre-existing factors were identified for evaluating the candidates’ performance. Each factor was evaluated on a scale ranging from 1 to 10 points. The examiner completed the rating sheet, which contained separate columns for each graded factor, and rated petitioner according to the scale provided by the Department. The examiner substantiated the ratings by noting specific elements that went into his evaluation.
 

 Moreover, the Department’s oral language proficiency exam “conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience”
 
 (Matter of Fink v Finegan, supra,
 
 at 362). Petitioner herself hired another Spanish linguist to review the exam. Although the examiner reached a different conclusion, she re-tested and re-evaluated petitioner using the same standards and a similar rating sheet as that utilized by the Department.
 

 The oral language exam tested grammar, pronunciation, and vocabulary in the context of a 15-minute extemporaneous conversation. These qualities cannot be measured solely by objective criteria. Although some subjective elements, of necessity, entered into the evaluation, the fact that a subjective element may have been involved to some degree in petitioner’s rating is not sufficient in and of itself to invalidate the Department’s ultimate determination:
 

 “The mandate of the Constitution for the ascertainment of merit and fitness, so far as practicable, by competitive examination, may not be transformed into an interdict against the examinations which are best adapted for the demonstration of fitness. It would be impossible to formulate a standard by which such qualities may be defined or measured with entire objectivity”
 
 (Matter of Sloat v Board of Examiners, supra,
 
 at 373).
 

 The Constitution does not require rigid adherence to some unrealistic principle of objectivity; “the law does not require the impossible or forbid the reasonable”
 
 (id.,
 
 at 373).
 

 
 *486
 
 III. The Review Procedure
 

 Petitioner also argues that the Department erred by not allowing her access to the tape of the exam during her administrative appeal. Her argument, again, is without merit.
 

 As noted above, a candidate who believes that there has been an error or defect regarding any aspect of the oral examination must notify the Department within five days of the exam. The record establishes that although petitioner understood this aspect of the administrative appeal process she filed no notice.
 

 After petitioner was notified that she did not pass the exam, she contacted the Department within 10 business days pursuant to the Department’s review procedures, and indicated that she wanted to review her exam. At her administrative review she was given the opportunity to listen to the tape and review the ratings and comments of the examiner, consistent with Department policy. She then completed an appeal form claiming only that she was “under pressure” and “realized that there were certain words that [she] could have said correctly.” Petitioner requested a copy of the tape because she questioned whether the examiner was speaking Castillian Spanish as opposed to the colloquial language of Spanish speakers living in the area; however, she never asserted that her performance was impaired by the examiner’s use of Castillian Spanish. Indeed, plaintiff only alleged what was never disputed — that the test was administered in Castillian Spanish. Because her complaints regarding the test did not amount to an identifiable error in the administration or grading of the exam, her appeal was properly denied.
 

 Although petitioner would have preferred that the examination be given in Latin American Spanish, she did not establish that the Department acted arbitrarily in utilizing an examiner who spoke Castillian Spanish. As long as the test was “competitive” in a constitutional context and reasonable in testing for the skills identified for the position, we will not second guess the format or the methods of the examination.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
 

 Order reversed, etc.
 

 [1]
 

 . The scale specifies the following grading criteria: Passing: 10 Outstanding 9 Very Good 8 Good 7 Passable
 

 Failing: 6 Somewhat inadequate 4 Markedly inadequate 2 Wholly inadequate
 

 [2]
 

 . Castillian Spanish, according to the parties, refers to Spanish as spoken in Spain.