Candace CARRABUS, Christopher Barry and all others similarly situated, Plaintiffs,

v.

Alan SCHNEIDER, Personnel Officer of the County of Suffolk and the County of Suffolk, Defendants.

No. 00–CV–2885 (ILG).

United States District Court, E.D. New York.

Sept. 19, 2000.

Timothy B. Glynn, Glynn and Mercep, Stony Brook, NY, A. Craig Purcell, Rubin & Purcell, LLP, Hauppauge, NY, for Plaintiffs.

Theodore D. Sklar, Robert J. Cimino, County Atty., Robert H. Cabble, Hauppauge, NY, John M. Gadzichowski, Sharyn A. Tejani, U.S. Dept. of Justice, Civil Rights Div., Washington, DC, for Defendants.

## MEMORANDUM & ORDER

GLASSER, District Judge.

This action is before the court on defendants' and defendant-intervenor's joint motion to dismiss the Amended and Supplemental Petition pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs in this case are applicants for the Suffolk County Police Department who challenge a police officer examination developed and administered by Suffolk County (the "County") in 1999, following the entry in 1986 of a Consent Decree in *United States v. Suffolk County*, No. 83–CV–2737 (E.D.N.Y. Sept. 12, 1986) (Nickerson, J.). The parties entered into the Consent De-

cree after longstanding litigation challenging Suffolk County's pattern or practice of engaging in employment discrimination against women, blacks and hispanics with respect to the hiring of police officers. The Consent Decree committed the County to reform certain selection criteria and personnel practices and also prescribed certain limits on the County's use of examinations in hiring. To date, the County has complied with the hiring provisions of the Consent Decree. It is now faced, however, with this challenge by plaintiffs, who maintain that the County's 1999 version of the police officer examination is flawed both in its design (it fails to fairly assess applicants' merit and fitness and eliminates testing variables that assess cognitive abilities) and in its administration (it permits the arbitrary and capricious manipulation of raw test scores). These shortcomings together, contend plaintiffs, violate the terms of the Consent Decree itself (¶¶ 11, 14, 15, 16, 18); the Tenth Amendment (¶¶ 38, 39, 40, 41, 45); the privileges and immunities clause of the Fourteenth Amendment (¶¶ 47, 55); 42 U.S.C. § 2000e–7 (¶ 55); Article V, § 6 of the New York State Constitution (¶¶ 8, 9, 10, 35, 36); New York Civil Service Law § 50(6) (¶¶ 8, 9, 25, 32); Suffolk County Code § 580 (¶¶ 8, 9, 26, 27, 28, 29, 30, 32); New York State's requirement for veteran's preference points (New York State Constitution Article V, § 6, New York State Civil Service Law § 85) (¶¶ 49, 50, 54); and New York General Business Law § 349 (¶ 61). Plaintiffs seek an order to enjoin the County from using the results of the 1999 examination and to compel the County to re-grade the examination in a manner that complies with relevant state and local laws.

Defendants Alan Schneider and the County and defendant-intervenor United States bring this joint motion to dismiss the Amended Petition pursuant to *Hayden v. Nassau County*, 180 F.3d 42 (2d Cir. 1999), in which the Second Circuit recently rejected a virtually identical challenge to a

hiring examination used by Nassau County Police Department in furtherance of a previous Consent Decree. Specifically, defendants and defendant-intervenor contend that, despite plaintiffs' efforts to plead otherwise, the Petition should be viewed as advancing a Title VII "reverse discrimination" claim similar to the claim rejected in *Hayden.* Consequently, defendants and defendant-intervenor argue for dismissal because plaintiffs have neither alleged facts sufficient to establish an intent on the part of the County to discriminate against plaintiffs by employing the test nor facts to establish that the County's use of the test had a disparate impact on plaintiffs.

Because the Petition does not allege facts sufficient to support either a theory of disparate treatment or impact, plaintiffs do not state a claim of reverse discrimination under Title VII. As for plaintiffs' remaining claims, which are predicated entirely in the 1986 Consent Decree itself and in other provisions of federal, state and county law, these also fail to allege facts sufficient to establish liability on the part of the County, and defendants' and defendant-intervenor's motion to dismiss therefore are granted.

## BACKGROUND

### A. The Underlying Title VII Action

In 1983, the United States filed a civil action against the County, the Suffolk County Police Department (the "SCPD"), its Police Commissioner, and the County's Civil Service Commission alleging, among other things, that the County had engaged in a *pattern or practice* of employment discrimination against women, blacks and hispanics with respect to job opportunities in the SCPD, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* *See United States v. Suffolk County,* No. 83–CV–2737 (E.D.N.Y. Sept. 12, 1986) (Nickerson, J.) After some three years of litigation, the parties entered into a Consent Decree that was approved and entered by the Court on September 12, 1986. In the Consent De-

cree, while the County expressly denies that it had discriminated against women, blacks or hispanics, it acknowledges that certain of its selection criteria and personnel practices and the substantial underrepresentation of women, blacks and hispanics in the SCPD could support an inference that discrimination had occurred. (Decree, ¶ 7)

The Consent Decree expressly prohibits the County from engaging in any further discrimination (Decree, ¶ 2), requires monitoring by the United States of the County's compliance with the Decree (Decree, ¶¶ 32–35), and provides that the Court retain jurisdiction of the United States' action against the County for the purpose of implementing the relief provided in the Decree, as well as "to effectuate Suffolk County's full and complete compliance with Title VII." (Decree, ¶ 37)

The Consent Decree specifically enjoins the County from using any qualifications or selection criteria for hire, assignment, transfer or promotion within the SCPD that would result in disparate impact upon women, blacks or hispanics, unless such qualifications or criteria have been validated in accordance with the *Uniform Guidelines on Employee Selection Procedures,* issued pursuant to 28 C.F.R. § 50.14 and 29 C.F.R. § 1607, and, thus, are lawful under Title VII. (Decree, ¶ 9) In this regard, the Decree requires the County through its consultant at the time, Richardson, Henry, Bellows & Co. ("RBH"), to undertake a criterion-related validity study of RBH's written entry-level law enforcement officer examination to determine if the RBH examination was appropriate under Title VII for use by the County in the selection of candidates for the position of entry-level police officer in the SCPD. (Decree, ¶ 4) That study was subsequently undertaken and completed; the parties agreed that the RBH-developed examination could be lawfully used by the County under Title VII. At the request of the parties, the Court approved the County's

administration of the RBH examination (then scheduled for April 16, 1988) and the County's subsequent use of the results of that examination. (April 12, 1988 Consent Order) Significantly, the April 12, 1988 Consent Order neither requires that Suffolk County continue to administer and use the RBH-developed examination, nor prohibits the county from doing so.

The 1986 Consent Decree does not call for the approval by the Court of any qualifications or selection criteria for employment in the SCPD other than for the County's initial use of the RBH-developed written examination. Instead, and consistent with the monitoring responsibilities of the United States under the Consent Decree, the Consent Decree provides only that the County provide the United States with at least 90 days notice prior to the implementation of any changes to such qualifications or selection criteria. (Decree, ¶ 8)

Consistent with the Consent Decree, the County has continued to consult with the Department of Justice on recruitment procedures and on the construction of civil service examinations designed to screen potential officers for the SCPD. The County administered the RBH examination in 1988, 1992 and 1996. (Amended Petition, 4) On May 22, 1999, following an independent review conducted by the DOJ, the County administered another such examination, developed by SHL Landy, Jacobs (the "SHL Exam") to SCPD applicants. It is this examination that plaintiffs in the instant action challenge.

**B.   The Carrabus Plaintiffs**

On May 17, 2000, plaintiffs commenced a CPLR Article 78 proceeding in New York Supreme Court seeking judicial review of the County's hiring test. Also on May 17, 2000, plaintiffs presented the state court with an order to show cause why the County should not be preliminarily enjoined from both hiring any police officers and using the results of the 1999 tests for any purpose pending the hearing and de-

termination of plaintiffs' claim. The state court granted plaintiffs' request for a temporary restraining order prohibiting the County from hiring police officers, but did not grant plaintiffs' request to enjoin defendants from using the test for any purpose. On May 22, 2000, the return date on the order to show cause, defendants filed a notice of removal from state court to federal court. Plaintiffs moved to remand to state court on June 19, 2000. On June 20, 2000, the United States intervened as a party defendant and, on June 28, 2000, together with the County, opposed the motion to remand. Also on June 28, 2000, the County moved to vacate the state court restraining order. This court denied plaintiffs' motion to remand and found moot defendants' motion to vacate the state court restraining order in an order dated July 28, 2000, familiarity with which is presumed. On August 25, 2000, defendants and defendant-intervenors jointly filed the present motion to dismiss the amended and supplemental petition.

### *DISCUSSION*

**I.   Dismissal**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). The court's consideration on a motion to dismiss is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41,

45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

## II. Federal Claims

### A. Title VII "Reverse Discrimination"

The thrust of plaintiffs' Amended and Supplemental Petition is that their scores on the 1999 SHL Exam administered by the SCPD were "the result of manipulation of raw scores, weighting of portions of the test, and other strategies, including the elimination of cognitive portions of the test by or at the sufferance of" defendants. (Am.Pet., ¶ 7) Notably, the Petition contains no claims under the Equal Protection Clause of the Fourteenth Amendment or Title VII. In light of the absence of such claims, a critical issue presented by this motion is whether the petition should nonetheless be viewed as advancing a claim of "reverse discrimination" under Title VII and, if so, whether that claim should be dismissed under *Hayden* because, as defendants' contend, the petition makes out neither a disparate treatment claim nor a disparate impact claim.

As in this case, plaintiffs in *Hayden* maintained that a County's efforts to reduce the adverse impact on minority applicants of its hiring practices by redesigning a police officer entrance examination was akin to an intent to discriminate against plaintiffs. Hayden, 180 F.3d at 50–51. The Second Circuit found this argument to be without merit when it held that plaintiffs' allegation that an entrance exam was designed to mitigate the negative impact on minority candidates did not state a claim of discrimination where plaintiffs made no suggestion that the County sought to "adversely affect" or "disadvantage" them or was driven by "sinister or invidious motivations." *Id.* To recognize a claim of discrimination where plaintiffs have not alleged that a hiring test was adopted with the intent to discriminate, according to the *Hayden* court, would undoubtedly impinge on the legitimate efforts of employers to attempt to remedy discrimination. *Id.*

■■ Applying the principals enunciated in *Hayden* to this action, it is obvious that plaintiffs' allegations are insufficient to establish that Suffolk County was motivated by a desire to adversely affect them. While the County's adoption of the SHL Exam was compelled by litigation aimed at rectifying a hiring scheme that disadvantaged minority applicants, there is no suggestion in the Amended Petition that the County's adoption of the SHL Exam was done with an intent to discriminate against plaintiffs. As in *Hayden,* Suffolk County has stated (and plaintiffs have not disputed) that all applicants were administered the SHL Exam in an identical fashion, regardless of race or gender, and that all exams were scored in an identical manner. *See Hayden* at 52. Nor is there a suggestion that the County's desire to design a hiring exam that would lessen the discriminatory impact on minorities is akin to a quota system in which candidates are treated differently based on their race or gender. In fact, it is undisputed that all police officer applicants were treated identically by the County regardless of race or gender.

The closest plaintiffs come in their papers to alleging a discriminatory intent is their claim that the SHL Exam was designed to generate higher "numbers of minority candidates in the top levels of the grading lists". (Am.Pet. at 19) However, *Hayden* makes clear that such an allegation, standing alone, does not establish a claim of reverse discrimination: the "sole allegation ... that designing the police officers' entrance exam to mitigate the negative impact on minority candidates ... is akin to an intent to discriminate ... is *wholly insufficient to state a claim that the County intended to discriminate* against appellants." *Hayden* at 50–51 (emphasis added).

In addition to failing to allege that the County was motivated by an intent to dis-

criminate, plaintiffs also fail to allege that they were disparately impacted by the SHL Exam. As *Hayden* once again counsels, the allegation that plaintiffs are disadvantaged by the minimization of cognitive skills in a facially neutral exam simply is insufficient to establish a disparate impact claim. *Id.* at 52. Because the SHL exam was scored in the same manner for all applicants regardless of race or gender, plaintiffs cannot show that they were excluded from full consideration or disadvantaged in any way because of their race or gender. *Id.* (citing *Byers v. City of Albuquerque*, 150 F.3d 1271 (10th Cir.1998)). As such, plaintiffs fail to show that the minimization of cognitive aspects in the SHL Exam caused them to endure a disparate impact.

While acknowledging that the Amended Petition does not plead a Title VII claim, plaintiffs maintain that the court should not dismiss based on the absence of a Title VII claim for two reasons, neither of which is persuasive. Plaintiffs first argue (in Points I and II of their Memorandum) that an insufficiency in their pleadings is not enough to permit dismissal where the facts alleged support another theory of liability. (Pls.' Mem. in Opp'n, 3) Citing no authority in this Circuit, plaintiffs rely instead on *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–1206 (7th Cir.1998). In *Kelley*, the Seventh Circuit reversed the district court's finding that, based on facts alleged in an earlier pleading but not in plaintiff's amended complaint, plaintiff did not state a claim under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), for purposes of a 12(b)(6) determination. *Id.* The thrust of the Seventh Circuit's opinion is that it is impermissible for the lower court to negate the FMLA theory based on the *inclusion* in early pleadings of a *fact* that does not appear in subsequent pleadings. *Id.* at 1204. Plaintiffs here propose something quite different, however; namely, that a Title VII claim can survive dismissal despite the omission of facts necessary to

make such a claim in either the original or amended petition.

Attempting to apply this theory to the Petition, plaintiffs contend that dismissal is inappropriate where, as here, they "have alleged violations of State law (that the Court finds are in reality allegations under Title VII or the Consent Decree)". (Pls.' Mem. in Opp'n, 3) Plaintiffs' argument that the facts alleged in the petition are sufficient to make out a Title VII claim rests on language in this court's July 28, 2000 Memorandum & Order. By recognizing the federal question posed by the Petition, plaintiffs suggest that the Court "indicated that the allegations in plaintiffs' Petition in this regard, if true, constitute a violation of Title VII." (Pls.' Mem. in Opp'n, 4) As evidence that sufficient facts are alleged in the petition to make out a claim under the 1986 Consent Decree, plaintiffs point to defendants' own "concession" in an earlier Memorandum that the County's "manipulat[ion of] test questions and answers to achieve specific results" as well as its "disregard[for the] mandatory merit and fitness requirements for police officer positions ... if true, would violate the Consent Decree." (Pls.' Mem. in Opp'n, 2 (citing Defs.' Mem. in Opp'n to Pls.' Mot. to Remand))

Second, plaintiffs argue (in Points III and IV) that dismissal is premature where the Petition on its face also alleges facts sufficient to constitute a claim under Title VII but where discovery has not yet been conducted. Plaintiffs alternatively argue that the present motion should be treated as a premature summary judgment motion because defendants filed an answer to the original petition in this action.

■ The reasoning behind plaintiffs' first argument against dismissal—in which they urge the court to read into the Petition both a Title VII claim and a claim under the 1986 Consent Decree—is flawed for the simple reason that the Petition does not allege facts supporting either claim. As for the Title VII claim, merely having pleaded a federal question that es-

tablishes proper subject matter jurisdiction with this court does not automatically imply that plaintiffs' challenge to the SHL Exam will survive Rule 12(b)(6) scrutiny. Unlike the standard for removal, which simply contemplates the existence of a claim that "arises under" federal law *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)), Rule 12(b)(6) establishes a separate requirement that a plaintiff allege facts that if true, would make out a claim under the relevant law. *See Hertz Corp. v. City of New York,* 1 F.3d 121, 131–32 (2d Cir.1993), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1055, 127 L.Ed.2d 375 (1994). While the federal question raised by plaintiffs' challenge to the SHL examination was adequate to justify removal, the fact that such a question has been raised does not permit survival under Rule 12(b)(6) unless the Petition contains facts alleging that the SHL Exam does not comply with Title VII and applicable provisions of the Code of Federal Regulations. Since the court finds the Petition devoid of such allegations, plaintiffs' efforts to recast the Petition in such a light must fail.

Nor is there merit to plaintiffs' argument (which, once again, is discussed more thoroughly in the section below) that the Petition states a valid claim under the Consent Decree. Even if defendants, in a memorandum previously submitted to this court, did suggest that the facts alleged, if true, might violate the Consent Decree, defendants' most recent submission as well as the plain language of the Consent Decree itself lay to rest any doubt as to

whether the current test violates the Consent Decree.

The reasoning behind plaintiffs' claim of prematurity is equally flawed. In order to find that plaintiffs Petition does not allege facts sufficient to make out a claim under Title VII, discovery need not be permitted. Rule 12(h)(2) and the accompanying advisory rule, however, clearly establish that a defense of failure to state a claim "may be made in any pleading" and thus expressly preserves this defense against waiver. Dismissal moreover is appropriate given *Hayden*'s clear instruction that the failure to allege facts establishing disparate intent or impact warrants dismissal even where there has been no discovery.[1]

## B. 1986 Consent Decree

■ As stated previously, plaintiffs contend that the County's administration of the SHL Exam violated the Consent Decree. Plaintiffs first claim that the County has violated Paragraph 6 of the Decree by failing to seek the court's approval prior to adopting the SHL Exam. The court is unable to identify any language in the Consent Decree which prohibits the County from developing an alternative examination to that described in the Decree unless it obtains the court's prior approval. No provision of the Consent Decree creates an obligation on the part of any of the parties to *United States v. Suffolk County* to seek the court's leave to amend the selection instrument originally established in the Decree. Instead, the Consent Decree merely provides that the County must inform the United States prior to implementing any changes in the County's hiring qualifications or selection criteria. Nowhere does this provision require notice

---

**1.** At oral argument, plaintiffs advanced one additional theory in support of their request for both discovery and an evidentiary hearing to determine the validity of the SHL Exam. Pointing to what they would call the "Firestone syndrome," plaintiffs argued that officers hired under this non-cognitive selection instrument would not perform adequately. Even if founded, the court finds that plaintiff's

speculations with respect to the quality of officers hired under the SHL Exam fall short of the showing required under Title VII and governing case law: namely, that the County's use of the SHL exam as a selection mechanism either was motivated by an intent to discriminate or accompanied by a disparate impact.

to the court. In fact, as the Joint Motion states, since the 1980 entry of the Consent Decree, the County has complied with this notice requirement, including providing notice to the United States of its intention to the adopt the SHL Exam in place of the RBH version established by the Decree.[2] Beyond failing to prohibit alternative exams, the Consent Decree makes perfectly clear that the only type of allegations that would violate the Decree are those that involve treating applicants differently on the basis of race or gender. (Decree, ¶ 1) Because plaintiffs have alleged no such treatment, they have no claim under the Consent Decree.

At the same time as they argue that the SHL Exam is invalid under the Consent Decree, plaintiffs also maintain that the Consent Decree itself is vulnerable to challenge because it creates an invalid "quota system." (Am.Pet., ¶ 43(B)) Again, *Hayden* clearly refutes this argument when it provides that a "County's desire to design an exam which would lessen the discriminatory impact on black[, hispanic and women] applicants is simply not analogous to a quota system or a minority set-aside where candidates, on the basis or their race [or gender], are not treated uniformly." *Hayden*, 180 F.3d at 50. Because nothing in the Decree appears to require the use of a quota system, plaintiffs' claim is meritless.

## C. Tenth Amendment [3]

■ Plaintiffs next allege that by creating a scheme in which the highest grades

on the SHL Exam are being awarded "to individuals whose presence on the police force would endanger the public safety and the public purse," the Consent Decree deprives the state and locality of their rights under the Tenth Amendment to the U.S. Constitution to safeguard public safety. (Am.Pet., ¶ 42) Defendants and defendant-intervenor argue that plaintiffs, who are private parties, cannot meet the injury and redressability requirements needed to establish standing to raise a claim under the Tenth Amendment and that, in any event, the Consent Decree is binding on the state and locality because it was issued pursuant to Title VII. Even assuming that plaintiffs can establish standing, the court finds that the Consent Decree does not usurp the rights of the state and locality guaranteed by the Tenth Amendment. The Consent Decree challenged in this action settled a case alleging violations of Title VII, a statutory scheme made applicable to state and local governments through the Fourteenth Amendment. Any doubt as to whether it may violate the Tenth Amendment has already been resolved by the Second Circuit, which has rejected the argument that Title VII's disparate impact provisions violate the Tenth Amendment. *See Guardians Ass'n of New York City Police Dept., Inc. v. Civil Service Com'n of City of New York*, 630 F.2d 79, 88 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). Correspondingly, the court fails to see how action taken by a defendant to remedy that impact, including

**2.** It also is worth noting that prior to the administration of the SHL Exam, the DOJ had its own expert conduct an independent evaluation of the proposed exam. While plaintiffs take issue in their papers and at oral argument with that expert's methodology, plaintiffs have pointed to absolutely nothing in the Consent Decree that provides them with a right to recover on a claim that fails to allege disparate treatment or impact based on a classification prohibited by Title VII.

**3.** In their papers, defendants and defendant-intervenor point out that plaintiffs address their Tenth Amendment claim, and their

claims based on Suffolk County Code and New York State General Business Law (discussed *infra*), in their Amended Petition but not in their Memorandum of Law in Opposition to the Motion to Dismiss. Defendants and defendant-intervenor therefore presume these claims to have been abandoned by plaintiffs. Suffice it to say that the issue of whether plaintiffs' indeed have abandoned these claims by failing to elaborate on them in their Opposition Memorandum need not be decided by this court, as the court in any event finds that plaintiffs have failed to allege facts sufficient to support any of these claims.

use of the testing scheme presently at issue, can violate the Tenth Amendment.[4]

### D. Privileges and Immunities Clause of the Fourteenth Amendment or 42 U.S.C. § 2000e–7

■ Plaintiffs' next claim appears to be that the 1986 Consent Decree violates the Privileges and Immunities Clause of the Fourteenth Amendment to the extent that the Decree infringes on the right of combat veterans to "advantages in obtaining government benefits and employment". (Am.Pet., ¶ 48) Plaintiffs fail, however, to cite any authority suggesting that veterans' preferences—which are creatures of state, not federal law—merit the type of protection extended under the Privileges and Immunities clause to rights that are "essential attributes of national citizenship." *Lutz v. City of York, Penn.,* 899 F.2d 255, 263 (3d Cir.1990) (citations omitted).

■ Plaintiffs further argue that they are entitled under 42 U.S.C. § 2000e–7to a hearing to determine the "validity" of the SHL Exam.[5] Amended Petition, ¶ 55. Rather than form the basis for an independent claim, however, this provision appears to define the need for a party held liable under for Title VII to comply with other laws. Moreover, this provision has been interpreted by at least one other court to overcome state law requirements that interfere with Title VII. *See Brown v. City of Chicago,* 8 F.Supp.2d 1095, 1112 (N.D.Ill.1998), *aff'd* 200 F.3d 1092 (7th Cir. 2000), *pet. for cert. filed* May 15, 2000, (finding that 42 U.S.C. § 2000e–7 obviated City's need to follow state court mandate regarding a prohibition on merit promotions). Given the Second Circuit's in-

struction in *Guardians* that "Title VII explicitly relieves employers from any duty to observe a state hiring provision which purports to require or permit a discriminatory employment practice[,]" the court is persuaded that 42 U.S.C. § 2000e–7 does not require a hearing to determine the validity of the SHL Exam. *Guardians,* 630 F.2d at 104–105.

### III. State Law Claims

### A. Article V, § 6 of the New York State Constitution and § 50(6) of the New York Civil Service Law

■ Plaintiffs next claim that defendants' use of the SHL Exam violates the requirements established by both Article V, § 6 of the New York State Constitution and Section 50(6) of New York State Civil Service Law that require civil service examinations to assess merit and fitness solely through the use of cognitive questions (because non-cognitive questions are inherently non-competitive) and to attribute a specific weight to the cognitive portion of an examination in the total score. Article V, § 6 of the New York State Constitution, which merely states that civil service examinations "shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive[.]" This provision does not on its face prohibit the testing of non-cognitive skills. In fact, contrary to plaintiffs' assumption that non-cognitive facets are non-competitive, various courts including the Second Circuit in *Guardians* have legitimated the efforts of employers to use non-cognitive abilities as predictors of job performance. *See e.g., Guardians,* 630 F.2d at 97 (upholding an examination in which one-third of the skills

---

4. In any event, the assumption, implicit in this assertion, that there is a necessary correlation between the minimization of cognitive factors and competent police officers is questionable, at best.

5. 42 U.S.C. § 2000e–7 provides:
    Nothing in this subchapter [Title VII of the Civil Rights Act of 1964] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter.

tested related to human relations, the assessment of which, though a difficult enterprise, should be permitted "[i]f the quality measured is not unduly abstract, and if it constitutes a significant aspect of the job"). *See also Merlino v. Schneider*, 93 N.Y.2d 477, 693 N.Y.S.2d 71, 715 N.E.2d 99 (1999) (oral civil service examination that tested for grammar, vocabulary and pronunciation found constitutional); *Carroll v. Ortiz*, 122 Misc.2d 164, 470 N.Y.S.2d 978 (N.Y.Sup.Ct.1983) (interactive oral examination that tested for monitoring, coaching, training, and resolving conflict found constitutional); *Bobrowich v. Poston*, 52 A.D.2d 976, 383 N.Y.S.2d 113 (3rd Dept. 1976) (unassembled examination testing for professional experience, college training, supervisory experience found constitutional). Plaintiffs therefore fail to state a claim under Article V, § 6 of the New York Constitution.

Plaintiffs' reliance on § 50(6) of New York State Civil Service Law to invalidate the SHL Exam based on its inclusion of non-cognitive testing is equally frail. Section 50(6) requires that: "[e]xaminations shall be practical in their character and shall relate to those matters which will fairly test the relative capacity and fitness of the persons examined to discharge the duties of that service into which they seek to be appointed." Again, given § 50(6)'s silence with respect to non-cognitive testing and the absence of any authority suggesting that the provision in fact prohibits such testing, the court finds that the Petition does not allege facts which, if true, would establish a violation of § 50(6).

Plaintiffs finally allege that by assigning various questions different weights the SHL Exam violates Article V, § 6 and § 50(6). First, Article V, § 6 and § 50(6) contain no provisions prohibiting weighting different portions of the examination. Furthermore, as discussed in greater detail below, regulations that apply to the New York State Civil Service Commission (4 NYCRR 1.1) specifically provide for the weighting of some components over others. 4 NYCRR 67.1(b), (g). In sum, because plaintiffs fail to allege facts sufficient to establish that the SHL Exam's inclusion of non-cognitive aspects fails to assess merit and fitness, their claims under Article V, § 6 of the New York State Constitution and § 50(6) of New York State Civil Service Law cannot stand.

**B. Article V, § 6 of the New York State Constitution and New York State Civil Service Law § 85 (Veterans Preference)**

Plaintiffs next claim that their right under Article V, § 6 of the New York State Constitution and New York State Civil Service Law § 85 to receive an additional five points in civil service examinations due to their status as honorably discharged veterans is "made meaningless" by the SHL Exam. In particular, plaintiffs argue that the veterans' preference is negated by the fact that the Exam is scored in a manner that does not take into account differences "between any of the scores obtained by individuals called for processing by the Suffolk County Police Department and the scores of the combat veterans" who are plaintiffs. (Am.Pet., ¶ 49) However, the regulations that apply to the New York State Civil Commission, with no regard to the veterans' preference, make clear that civil service examinations may be scored by using formulas such as weighting (which plaintiffs allege was done here), subtracting, dividing and otherwise adjusting scores. Because the methods alleged to have been used fall squarely within the formulas permissible under the regulations, plaintiffs' claim that the SHL Exam infringes upon their right to receive a veterans' preference must fail.

**C. Section 349 of the General Business Law of New York**

Plaintiffs' next state law claim arises under § 349 of the New York State General Business Law. Specifically, plaintiffs allege that the County's creation of an eligibility list as a result of the SHL Exam and the hiring of any candidates on that

list are "deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of a service and are unlawful [under] General Business Law §§ 349(a) and (h). (Am.Pet., ¶ 61)" As at least one case makes clear, however, § 349 is a consumer-oriented statute that offers a set of remedies to "an individual consumer who falls victim to misrepresentations made by a seller of consumer goods usually by way of false advertising." *Genesco Entertainment v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y.1984). In order to plead and prove a claim for relief under this statute, moreover, a "plaintiff must at a threshold, charge conduct that is consumer oriented." *Occidental Chemical Corp. v. OHM Remediation Services Corp.,* 173 F.R.D. 74, 76 (W.D.N.Y.1997) (citations and internal quotation marks omitted). Because plaintiffs do not allege that the County has sold plaintiffs any goods or services (besides collecting an application fee to defray the cost of administering the test), their claim under General Business Law therefore must fail.

### D. Suffolk County Code

Plaintiffs finally refer in the Petition to the Suffolk County Code, alleging somewhat imprecisely that defendants have violated the County Code through their administration of a test that is "non-competitive, unconstitutional and not valid for its use of non-cognitive data." (Am. Pet., ¶ 9) Specifically, plaintiffs claim that use of the SHL Exam violates section 580–1 of the County Code, which plaintiffs contend "was created ... to make appointments based upon merit and fitness as provided in Article V Section 6 of the New York State Constitution, the Suffolk County Charter and the Civil Service Law of the State of New York." (Am.Pet., ¶ 26) Plaintiffs appear to argue that the County's inclusion of non-cognitive items on the SHL Exam and the weight given to those items reduced the validity of the exam such that it no longer measures "merit and fitness." However, as discussed previously, the only facts alleged in support of this merit argument are that plaintiffs did not

rank highly under the SHL Exam, not that the applicants chosen lack merit or fitness to perform the job of a police officer satisfactorily. Moreover, to the extent that the court has already found that plaintiffs have not made a claim under either Article V Section 6 of the New York State Constitution, the Suffolk County Charter or the Civil Service Law of the State of New York, the merit and fitness argument of the County Code is unpersuasive.

Plaintiffs further contend that under sections 580–3 SCC and 580.111 of the County Code, the County Personnel Director has the power to amend a list of eligible candidates and to revoke that list "where an error has been made" and "where the provisions of Civil Service Law are not properly or sufficiently carried out." (Am. Pet., ¶¶ 27, 28) In light of the court's finding *supra* that no errors have been alleged under the Civil Service Law, plaintiffs fail to state a claim under this section.

### CONCLUSION

For the foregoing reasons, defendants' and defendant-intervenor's motion to dismiss is granted.

SO ORDERED.